*In re* ÁNGEL R. ALBIZU MERCED.

*Número:* AB-94-3          *Resuelto:* 17 de mayo de 1994

*Pedro A. Delgado Hernández, Procurador General,* e *Yvonne Casanova Pelosi, Procuradora General Auxiliar,* abogados de El Pueblo; *Ángel R. Albizu Merced, pro se.*

PER CURIAM:

# I

El 11 de enero de 1994 el Procurador General nos sometió un informe en relación con una queja presentada por la Sra. Claudia Marinelly Mármol contra el Lic. Ángel Albizu Merced. En el mismo expresó que el 28 de mayo de 1987, la señora Marinelly Mármol compareció a su oficina y alegó que allá para 1984, el querellado, licenciado Albizu Merced, fue contratado por el Sr. Pedro Manolín García para que autorizara una escritura de segregación y compraventa, en la cual ella comparecería como adquirente de una propiedad del señor García. Expresó que, desde entonces, había tratado infructuosamente de comunicarse con el licenciado Albizu Merced para obtener una copia de la escritura otorgada y prueba de su inscripción en el Registro de la Propiedad.

El 18 de agosto de 1987 el Procurador General le envió una carta al licenciado Albizu Merced informándole de la queja presentada en su contra. El 9 de septiembre de ese mismo año el licenciado Albizu Merced contestó alegando que el atraso en la presentación e inscripción de la parcela se debió a que "[l]a Administración de Reglamentos y Permisos [A.R.Pe.] como condición para la inscripción de los solares en el Registro de la Propiedad exi[gía] la Cesión de un Camino Público al Municipio de Guaynabo". Continuó explicando que aún no habían conseguido la aprobación para la aceptación del camino por parte del Municipio, pero que para lograrlo había hecho una serie de gestiones. Incluyó los documentos que avalaban las gestiones realizadas.

El 14 de diciembre de 1987 el licenciado Albizu Merced envió otra comunicación al Procurador General en la que le informó que había entregado los planos del camino a segregarse en el Departamento de Obras Públicas del municipio, entidad que debía aprobarlos luego de que la Asamblea

Municipal preparara una ordenanza que autorizara al Alcalde a comparecer en escritura pública. El 23 de febrero de 1988 el querellado le comunicó al Procurador General que el Municipio de Guaynabo había aceptado la franja de terreno y que tan pronto la Asamblea Municipal aprobara la ordenanza dando el visto bueno para la adquisición del camino, presentaría la escritura de las hermanas Marinelly Mármol en el Registro de la Propiedad.

Transcurrieron aproximadamente dos (2) años sin que el licenciado Albizu Merced informara del resultado de sus gestiones. En enero de 1990 el Procurador General se comunicó nuevamente con él. Este le informó que "en 60 días ... enviaría la evidencia necesaria para demostrar que la escritura de segregación y compraventa objeto de esta queja había sido debidamente presentada en el Registro de la Propiedad". El 21 de agosto de 1990 el Procurador General, ante el incumplimiendo del licenciado Albizu Merced con lo prometido, le envió una comunicación solicitando información sobre el estatus de las gestiones. El licenciado Albizu Merced compareció e indicó que habían surgido nuevos problemas que había tenido que resolver. No incluyó evidencia de haber presentado la escritura en el Registro de la Propiedad.

Pasaron dos (2) años más sin que el licenciado Albizu Merced informara las gestiones realizadas en relación con el caso que motivó la queja en su contra. El Procurador General se comunicó nuevamente con él. Luego de lo cual "[é]ste informó que en marzo de 1992 las escrituras habían sido notificadas por el Registro de la Propiedad a pesar de haber sido presentadas en febrero de 1991".

De los documentos que acompañaron el informe surge que el 31 de enero de 1992 el Registrador, con relación a la Escritura Núm. 22 de 20 de junio de 1987, otorgada ante el abogado notario Albizu Merced, asiento 188 del Diario 210, le notificó las faltas siguientes: "(1) no se describe el Remanente de la finca, tomando en consideración las segregacio-

nes particulares del Registro; (2) falta la Resolución y el Plano emitidos por [ARPE] aprobando las segregaciones objeto de este asiento; (3) deberá describir el Remanente de la finca una vez efectuadas las segregaciones que se solicitan." Con relación a la Escritura Núm. 4 de 25 de enero de 1991, otorgada ante el mismo notario, asiento 189 del Diario 210, notificó las faltas siguientes: "(1) falta inscripción previa el documento presentado al asiento 188 del diario 210 que ha sido notificado; (2) no se describe el Remanente de la finca, tomando en consideración las segregaciones practicadas en el Registro; (3) falta Resolución y Plano emitidos por [A.R.Pe.] aprobando la segregación objeto de este asiento; (4) deberá describir el Remanente de la finca una vez efectuada la segregación que se solicita." Los asientos de presentación con relación a estas escrituras caducaban el 31 de marzo de 1992.

En comunicación de 26 de agosto de 1992 el licenciado Albizu Merced informó que había retirado los documentos del Registro de la Propiedad y que, junto al vendedor, se proponía "solicitar a [A.R.Pe.] una enmienda a la Resolución emitida para conformar el plano de Inscripción con la situación registral". Cinco (5) meses más tarde, el 13 de enero de 1993, el Procurador General se comunicó nuevamente con el licenciado Albizu Merced. Este le informó que había presentado las escrituras por segunda vez al Registro de la Propiedad pero que el Registrador nuevamente le había notificado faltas. El 26 de abril de 1993 el Procurador General le requirió que informase sobre las gestiones que había realizado para corregir las faltas notificadas. En esta ocasión el licenciado Albizu Merced informó que aún le faltaba por autorizar un acta aclaratoria y que esperaba terminar su gestión en una (1) semana.

Cuatro (4) meses más tarde, la señora Marinelly Mármol acudió a la Oficina del Procurador General y se quejó de que el licenciado Albizu Merced "aún no había autori-

zado las escrituras y que dicho abogado continuaba completamente inaccesible". El Procurador General se comunicó telefónicamente con el abogado. Este solicitó quince (15) días para dar por terminado el asunto. Varios meses más tarde, el 11 de noviembre de 1993, el licenciado Albizu Merced informó que había autorizado las escrituras y que las había presentado en el Registro de la Propiedad. Se comprometió a enviar a la Oficina del Procurador General copias de los boletos de presentación. El 11 de enero de 1994, al momento de presentar el informe, el Procurador General aún no los había recibido.

El 11 de febrero de 1994 concedimos término al licenciado Albizu Merced para que mostrara causa por la cual, "tomando en consideración el Informe del Procurador General y los documentos que se acompañan, a la luz de la conducta de dejadez e incumpliento con los requerimientos del Procurador General que en relación con el ejercicio de la práctica de la notaría allí se reflejan, no deberíamos sancionarlo".

En su comparecencia, el licenciado Albizu Merced sólo hace mención de uno (1) de sus múltiples incumplimientos con los requerimientos de la Oficina del Procurador General: el "no haber contestado o enviado copia del boleto [de presentación]" al Procurador General. Excusa este incumplimiento indicando que su error consistió en que entregó el boleto a la señora Marinelly Mármol y no al Procurador General, y que confió en que la señora Marinelly Mármol se lo notificaría.

Como bien señala el Procurador General, "[s]e nos hace imposible comprender cómo el abogado querellado pueda justificar que hayan transcurrido más de 9 años desde que se comprometiera a autorizar la escritura de segregación-compraventa objeto de esta queja [y presentarla] ante el Registro de la Propiedad sin que lo haya hecho". También resulta incomprensible el que hayan tenido que transcurrir más de siete (7) años desde que la señora Marinelly Mármol se quejara de esta conducta ante la Oficina del Procurador General, para que por fin haya logrado, por lo

menos, obtener los boletos de presentación que necesita. El licenciado Albizu Merced trata de justificar esta tardanza explicando que "han sido los obstáculos administrativos y burocráticos [los] que han contribuido al atraso en el trabajo" y nos suplica le permitamos "terminar el caso ya que está en su etapa final en el Registro de la Propiedad". Se compromete a mantener al Procurador General informado de todo asunto importante que surja hasta que finalice su gestión. Nada nos dice sobre su falta de comunicación con la señora Marinelly Mármol para mantenerla informada sobre las dificultades que estaba confrontando con relación a la inscripción de la escritura en el Registro de la Propiedad.

## II

Conocido es el que todo "abogado en el desempeño de su gestión notarial está obligado a cumplir con lo dispuesto en la ley, en los Cánones de Ética o en el contrato con las partes. La inobservancia de esos deberes lo expone no sólo a una acción en daños por los perjuicios causados, sino a la jurisdicción disciplinaria por parte de este foro judicial". *In re Cruz Tollinche*, 114 D.P.R. 205, 207 (1983). Conforme lo dispuesto en el Canon 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, todo notario tiene el deber de mantener a las partes, que comparezcan ante él para otorgar algún documento, informadas de todo asunto importante que ocurra y afecte la gestión que le ha sido encomendada con relación al documento por él autorizado. También es su deber desplegar todas las diligencias necesarias con prontitud y asegurarse de que no se causen indebidas dilaciones en los asuntos que les son encomendados. Canon 12 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. En conformidad con las exigencias del Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap.

IX, el notario deberá, con relación a los documentos que se otorgan ante él, ser diligente y desplegar en cada caso su más profundo saber y habilidad.

▋ Reiteradamente hemos destacado la importancia de la función investigativa que realiza la Oficina del Procurador General con relación a las quejas referentes a posibles violaciones por parte de los abogados y notarios de los cánones de ética profesional que regulan la profesión legal y el ejercicio del notariado. Hemos puntualizado la necesidad de que los abogados, pronta y responsablemente, atiendan las comunicaciones provenientes de dicha oficina relacionadas con cualquier investigación de esta naturaleza. "[L]a voluntaria y temeraria desatención de los abogados a esta clase de comunicación tiene el mismo efecto disruptivo en nuestra función reguladora de la profesión que cuando se desatiende una orden emitida directamente por este Tribunal." *In re Pagán Ayala*, 115 D.P.R. 814, 816 (1984); *In re Oquendo Carrasquillo*, 117 D.P.R. 417, 418 (1986); *In re Izquierdo*, 126 D.P.R. 202 (1990); *In re Álvarez Meléndez*, 129 D.P.R. 495 (1991).

La conducta del licenciado Albizu Merced en el ejercicio del notariado, al no mantener a los otorgantes informados de las dificultades que alega confrontó con relación a los documentos ante él otorgados y su falta de diligencia en corregir las faltas señaladas, y atender y cumplir con los requerimientos de la Oficina del Procurador General, merecen nuestra más enérgica censura y amonestación, *en consecuencia de lo cual se le suspende del ejercicio del notariado por un (1) año. El licenciado Albizu Merced, además, deberá, a su costo, terminar las gestiones en este caso hasta que las escrituras queden debidamente inscritas en el Registro de la Propiedad y mantendrá a este Tribunal informado del "status" de esas gestiones, bajo apercibimiento de que si no lo hace podría ser sancionado como abogado.*

El Juez Asociado Señor Negrón García no intervino.