EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | Querella |
|---|---|
| Ismael Cuevas Velázquez | 2000 TSPR 124 |

Número del Caso: CP-1997-03

Fecha: 29/JUNIO/2000

Oficina del Procurador General:

        Lcda. Ivonne Casanova Pelosi
        Procuradora General Auxiliar

Abogado de la Parte Querellada:

        Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO**Error! Bookmark not defined.**

In re:

Ismael Cuevas Velázquez

CP-97-3

PER CURIAM

San Juan, Puerto Rico a 29 de junio de 2000

El 8 de septiembre de 1994, el señor José L. Román Hernández presentó queja contra el Lcdo. Ismael Cuevas Velázquez.  En la misma alega que el abogado-notario no cumplió con su deber de diligenciar de manera responsable y adecuada las gestiones referentes a la presentación e inscripción de una escritura sobre partición de herencia, adjudicación de bienes, segregación y notificación de compraventa.

Un día después, el 9 de septiembre, se envió al licenciado Cuevas Velázquez notificación de la queja y se le concedió diez (10) días para comparecer y reaccionar a la misma.  Transcurrido el término concedido, el licenciado Cuevas Velázquez solicitó un término adicional de siete (7) días para comparecer.

El 3 de enero de 1995, expirada la prórroga concedida por este Tribunal, el licenciado Cuevas Velázquez finalmente compareció informando que presentaría un informe, a más tardar el 10 del mismo mes, en relación al estado de su gestión para inscribir la escritura en controversia. El 10 de enero presentó contestación a la queja y solicitó un término de seis (6) meses para corregir los defectos notificados por el Registrador de la Propiedad. Este Tribunal mediante resolución del 3 de febrero de 1994, le concedió cuatro (4) meses para realizar los trámites necesarios para inscribir la escritura.

Transcurrido dicho término sin que compareciera el licenciado Cuevas Velázquez, este Tribunal le concedió un nuevo plazo de quince (15) días para que informara las gestiones realizadas para dar cumplimiento a la resolución antes mencionada. Nuevamente, el licenciado Cuevas Velázquez desatendió la orden de este Tribunal.

A la luz de lo anterior, el 25 de agosto de ese año, le concedimos quince (15) días para que mostrara causa por la cual no debía ser suspendido temporeramente del ejercicio de la abogacía.

El 25 de septiembre, expirado ya el término concedido, el licenciado Cuevas Velázquez solicitó prórroga, hasta el 2 de octubre de 1994, para responder a los requerimientos de este Tribunal. El licenciado Cuevas Velázquez compareció luego de vencido el término propuesto por él mismo, informando que la escritura se sometió nuevamente al Registro de la Propiedad para su debida inscripción.

A los fines de evaluar las gestiones realizadas por el licenciado Cuevas Velázquez, el 3 de noviembre del mismo año, le concedimos al Sr. Román Hernández un término de veinte (20) días para que expusiera su posición respecto a lo informado por dicho abogado. En respuesta, el Sr. Román Hernández presentó moción incluyendo la notificación del Registro de la Propiedad detallando diez (10) faltas que impidieron la inscripción de la escritura en controversia.

A la luz de dicho documento, se le concedió al licenciado Cuevas Velázquez hasta el 20 de febrero de 1996 para subsanar los defectos señalados por el Registrador y para explicar las razones por las cuales persistió en las faltas señaladas por el señor Registrador lo cual impidió la inscripción de la mencionada escritura, violando así su propio compromiso con este Tribunal.

El 20 de febrero del mencionado año, el licenciado Cuevas Velázquez presentó moción enumerando las gestiones que había realizado y las provisiones que tomaría para lograr la inscripción de la escritura en controversia. Además, se comprometió a rendir un informe semanal sobre las gestiones realizadas. El licenciado Cuevas Velázquez nunca presentó dichos informes.

Este Tribunal, mediante orden, le concedió hasta el 30 de marzo de 1996, para resolver los problemas que originaron la queja en su contra y para someter un informe detallando las gestiones realizadas con la evidencia correspondiente de que se subsanaron las deficiencias señaladas por el Registro de la Propiedad y que el documento fue aceptado. El licenciado Cuevas Velázquez no compareció.

Dado su incumplimiento, el 17 de mayo de 1996, se le concedió al licenciado Cuevas Velázquez quince (15) días para cumplir con la orden del 30 de marzo. Expirado dicho término, el licenciado Cuevas Velázquez solicitó término adicional, hasta el 9 de septiembre de ese año, para cumplir con la orden del Tribunal.

El 6 de septiembre de 1996, le concedimos un término final de quince (15) días, advirtiéndole que no toleraríamos dilación alguna y advirtiéndole que su incumplimiento conllevaría su suspensión automática de la abogacía. <u>Casi tres meses de expirado dicho término</u>, el licenciado Cuevas Velázquez presentó moción alegando que no había podido comunicarse con el Sr. Román Hernández para resolver el asunto en cuestión debido a que éste se negó recibir documentos y llamadas del licenciado Cuevas Velázquez.

A la luz de la antedicha moción, emitimos orden mediante la cual referimos la queja al señor Procurador General para que realizara las investigaciones necesarias y sometiera el informe correspondiente. El 20 de marzo de 1997, el Procurador General presentó querella contra el licenciado Cuevas Velázquez imputándole haber violado los Canones 12 y 18 del Código de Etica Profesional, 4 L.P.R.A. Ap. IV.

Expirado el término concedido para contestar la querella sin que el licenciado Cuevas Velázquez compareciera, designamos al Lcdo. Enrique Rivera Santana, Comisionado Especial, para que celebrara una vista evidenciaria y rindiera el informe correspondiente.

Así lo ha hecho el señor Comisionado. En su Informe éste ha

formulado las siguientes Determinaciones de Hechos:

"1– El querellado, Lcdo. Ismael Cuevas Velázquez, de 65 años, fue admitido a ejercer la profesión de abogado y notario en el año 1967; le fue asignado el número de colegiado 4309 por el Colegio de Abogados de Puerto Rico.

2– En el año 1979 el Lcdo. Cuevas Velázquez fue contratado para que, entre otras cosas, preparara y se otorgara ante él un documento que tenía el propósito de adjudicar a determinadas personas un determinado número de solares que por la misma escritura se segregarían de la siguiente finca:.

"Rústica: Parcela radicada en el Barrio Camarones del término municipal de Guaynabo, con una cabida de tres (3) cuerdas y en lindes por el Norte y Este con la finca principal de la que se segregó propiedad de Manuel Rivera Rosa y Eligia Vega Vega; por el Sur con Tomás Negrón y por el Oeste con un camino vecinal y con una quebrada que la separa de los terrenos de Tomás Negrón."

Por los trabajos que realizaría el Lcdo. Cuevas Velázquez para su cliente, la Sucesión del finado Mateo Hernández, se pactaron y le fueron pagados honorarios ascendentes a Mil Doscientos Dólares ($1,200.00).

2– [sic] La finca antes descrita pertenecía entonces a la Sucesión de Mateo Hernández y a la viuda de éste, doña Asunción Reyes. La labor que llevaría a cabo el Lcdo. Cuevas Velázquez contemplaba dividir la herencia, adjudicando los predios de terreno a segregarse a miembros de la sucesión. Lo acordado con el abogado-notario conllevaba también segregar dos predios para uso público para adjudicarse al Estado Libre Asociado y al Municipio de Guaynabo respectivamente. También contemplaba segregar otro predio que los miembros de la sucesión venderían a un tercero. Dicha segregación había sido previamente autorizada como una lotificación simple por la Administración de Reglamentos y Permisos en abril del 1979, en el caso número 78–16–D–4301–SPL.

3– [sic] El documento mediante el cual se contemplaba dividir la herencia, segregando los predios y adjudicándolos a los herederos, como se ha dicho, y por el cual se ratificaba la venta a un tercero, se otorgó ante el Notario ahora querellado, Lcdo. Cuevas Velázquez, el 31 de mayo de 1979. Constituyó la escritura número 27 otorgada ante dicho Notario en el año 1979. En el documento comparecieron los herederos y la viuda, Asunción Reyes, así como un tercero a favor del cual se adjudicaba (mediante ratificación de compraventa) una de las parcelas segregadas. No comparecieron el Estado Libre Asociado ni el Municipio de Guaynabo, a favor de los cuales se adjudicaban sendos predios para uso público. En el documento no se adjudicó ningún predio a la viuda en pago de su participación ganancial, ni se hizo mención de que esa participación le sería pagada con otros bienes. Tampoco se especificó nada sobre existencia de otros bienes.

El documento fue presentado a la correspondiente Sección (de Guaynabo) del Registro de la Propiedad. Mediante anotación hecha en el propio documento, con fecha de 29 de mayo de 1980, se denegó la inscripción del mismo por no comparecer en la escritura el Estado Libre Asociado ni el Municipio de Guaynabo, por no describirse ni valorarse una servidumbre que se pretendía establecer en dicho documento y por dejar de cumplir con una condición establecida por ARPE al autorizar la segregación.

4-     [sic] Surge de la documentación (sometida por el Procurador General sin objeción del querellado) que el documento fue presentado nuevamente al Registro de la Propiedad el 8 de diciembre de 1981, al Asiento 250 del Libro 128, acompañado de dos Actas Aclaratorias y un Acta Notarial.  El 5 de marzo de 1982 el Registrador de la Propiedad le remitió una notificación (fechada 25 de abril de 1982) al propio Lcdo. Cuevas Velázquez, informándole de deficiencias en los documentos, especificándose la falta de comprobantes para cubrir la totalidad de los derechos, así como deficiencias en ambas Actas Aclaratorias (herederos que no comparecían en una y heredero que no firmaba en otra) y en el Acta Notarial (se fijaba valor a una cuota usufructuaria, lo que debía ser por Acta Aclaratoria en la que comparecieran todos los herederos).

5-     [sic] En una fecha no precisada durante el año 1984, los clientes le solicitaron al Lcdo. Cuevas Velázquez que renunciara como su abogado-notario y así se convino.  Los documentos, que estaban aún sin inscribirse, le fueron entregados a los clientes (hasta entonces) del Lcdo. Cuevas Velázquez.

       Los herederos, a través de la Lcda. Marilú Hernández, que era sobrina de uno de ellos, pasaron entonces a usar los servicios de la Lcda. Rosario González Rosa.  La documentación fue entregada a dicha letrada.

6-     [sic] En el año 1989, transcurridos cinco años sin que los documentos que se llevaron a la atención de la Lcda. González Rosa fueran inscritos, el Sr. José L. Román Hernández, hijo de uno de los miembros de la aludida sucesión, visitó la oficina del Lcdo. Cuevas Velázquez y lo contrató para que terminara los trabajos que había comenzado una década antes.  Se acordaron honorarios por la suma de 2,500.00.  Con fecha de 15 de marzo de 1989 se entregó al Lcdo. Cuevas Velázquez un cheque por la suma de $1,000.00; posteriormente en el 1991 se le entregó otro cheque por $100.00 y en 1992 otro por $30.00.

       Aunque el nuevo acuerdo por servicios profesionales se convino en el año 1989, no fue hasta el 1991 que se le devolvió al Lcdo. Cuevas Velázquez el expediente que estaba en posesión de la Lcda. González Rosa.

7.     [sic] El Lcdo. Cuevas Velázquez continuó entonces con las gestiones encaminadas a lograr que se pudiera inscribir la escritura número 27 otorgada ante él en el año 1979.  Hubo una nueva presentación del documento el 25 de enero de 1993, al Asiento 270, Folio 135 del Libro 232 de Guaynabo. Se acompañó con una documentación relacionada con una declaratoria de herederos enmendada.

       El 28 de febrero de 1994 el Registrador remitió una comunicación al Lcdo. Cuevas Velázquez en la que le mencionó un defecto en la escritura número 27 del año 1979, relativo a que al adjudicarse los distintos predios de la finca perteneciente a la sucesión y a la viuda, no se le adjudicaba participación alguna a dicha viuda, que resultaba ser condueña de la propiedad.  También se notificó como defecto que la declaratoria de herederos enmendada debía presentarse "Por un asiento aparte con los correspondientes complementarios".

       Para la fecha de esta nueva presentación (enero de 1993), las viuda, doña Asunción Reyes, había fallecido.  Esta situación, más la desaparición del plano originalmente aprobado por ARPE y el extravío del que obraba en ARPE (Ver Exhibit 1 del querellado); diferencias en cabida con un nuevo plano que se levantó; pugnas entre herederos por colindancias que habían dado origen a una querella en el

Tribunal de Distrito de Guaynabo, dificultaba la labor del Lcdo. Cuevas Velázquez.

8- [sic] El 8 de septiembre de 1994 se presentó la queja contra el ahora querellado ente [sic] el Tribunal Supremo. Durante el trámite relacionado con la queja y posteriormente con la querella, el Lcdo. Cuevas Velázquez continuó haciendo gestiones encaminadas a lograr la inscripción de la escritura número 27 a la ya hemos aludido. El 4 de octubre informó él a este Tribunal que había "sometido" al Registro de la Propiedad la escrituras de segregación y partición de herencia, tres Actas Aclaratorias y un Acta Notarial con lo que, según el querellado, se resolvería "las faltas...detalladas por el Registrador de la Propiedad". Informó que los documentos se habían presentado al Folio 167, Asiento 334, libro 272 de Guaynabo.

9- El querellante realizó gestiones ante el Registrador de las Propiedad para que se adelantara la calificación de los documentos para él (el querellante) poder atender un requerimiento que le había hecho el Tribunal Supremo (ver Relación del Caso). Como resultado de esa gestión el Registrador le remitió copia de una notificación, en la que no aparece fecha, dirigida al Sr. Gualberto López[1] de Guaynabo y en la que señala diez (10) defectos en los documentos presentados al Asiento 334 del Libro 272. Se especifica que los documentos presentados con fecha de 25 de enero de 1993,[2] adolecían, entre otros, de los siguientes defectos: diferencias en cabida en la escritura y la resolución de ARPE aprobando la segregación: no se acompañó copia de la ordenanza municipal autorizando al Alcalde de Guaynabo a representar al municipio; no se hizo adjudicación a favor de la viuda en pago de su participación ganancial; no se presentó declaratoria de herederos de Asunción Reyes; algunas descripciones de predios no se ajustaban al plano presentado; no se acreditó la declaratoria de herederos de Francisco Ramón Hernández Reyes, heredero de Mateo Hernández, quien murió posteriormente, lo que debía hacerse mediante presentación de asiento aparte; no quedaba claro el porqué en una escritura (documento complementario) que se otorgó ante el Notario Cuevas Velázquez (la número 5 de 6 de marzo de 1984) se indicaba que Francisco Ramón Hernández Reyes falleció el 19 de mayo de 1981, mientras que en otra escritura otorgada con fecha posterior a la se [sic] dice que éste falleció y otorgada también ante el Notario Cuevas Velázquez (también documento complementario, la número 29 de 19 de noviembre de 1981) compareció el Sr. Francisco Ramón Hernández Reyes. La notificación concedía al Notario hasta el 20 de febrero de 1996 para corregir los defectos señalados. Surge de la notificación del Registrador de la Propiedad que se le remitió copia de la misma al Lcdo. Cuevas

---

[1] Hay que asumir que el Sr. Gualberto López fue el que presentó los documentos al Registro de las Propiedad y por eso las notificación se le dirige a él. Aunque la notificación no tiene fecha, hay que inferir que fue emitida a mediados de diciembre de 1995, pues le concede al Notario un término de 60 días para corregir defectos y señala que ese término vence el 20 de febrero de 1996.

[2] La prueba no dejó establecido porque razón aparecen dos presentaciones distintas (de la escritura 27 y documentos complementarios) con la misma fecha. Una es la que aludimos en este párrafo y otra es la que aludimos anteriormente en el párrafo número 7.

Velázquez, así como al querellante en este caso, el Sr. José L. Román Hernández.

Al no subsanarse los defectos en la fecha señalada, el Registrador de la Propiedad hizo anotación al margen del asiento de presentación indicando que el mismo había "caducado en virtud del Artículo 52 de la Ley 198 del 8 de agosto de 1979". Del expediente (sometido como prueba ante el Comisionado Especial) surge que los documentos fueron retirados del Registro de la Propiedad el 1 de marzo de 1996.

10- En la mismas fecha en que caducó el asiento de presentación, 20 de febrero de 1996, el querellante presentó ante este Tribunal un escrito haciendo constar las gestiones que había llevado a cabo e informando las que se proponía efectuar a partir de esa fecha. Se obligó a presentar informes semanales de progreso al Tribunal. No presentó tales informes y por lo tanto no informó el hecho de que hubiera caducado la presentación en el Registro de la Propiedad, ni que hubiera retirado los documentos.

11- El hecho de que se presentara la queja ante el Tribunal Supremo, por las razones que se expusieron en la misma, dio lugar a que se rompieran las relaciones entre el Lcdo. Cuevas Velázquez y el querellante, persona en quien se había delegado todo lo relativo a las gestiones para lograr que se inscribiera la escritura número 27 a la que tantas veces hemos aludido.

El Lcdo. Cuevas Velázquez hizo gestiones para reunirse con el Sr. Román Hernández sin éxito alguno. Inclusive fue a visitarle, aunque en fecha (19 de febrero de 1996) en que ya estaba por vencerse el término concedido por el Registrador para corregir los defectos. El Sr. Román Hernández se negó a recibir al letrado. Envió este último cartas al Sr.Román Hernández, quien rehusó recibirlas. Hizo gestiones através de la Oficina del Procurador General para que el Sr. Román Hernández le supliera determinada información que, según el querellado, necesitaba para corregir los defectos señalados por el Registrador de la Propiedad. Como resultado de estas gestiones el querellante le remitió al abogado la información solicitada por este último. Dicha información no bastó para corregir los defectos, por lo que el querellado paralizó todas las gestiones. Tiene aún el expediente en su poder.

12- En julio de 1994 el querellante había visitado las oficinas del Lcdo. Cuevas Velázquez y este último entregó a aquél una fotocopia de un boleto de presentación de un documento en el Registro de la Propiedad, supuestamente relacionado con documentos de la sucesión Hernández Reyes. (Exhibit 1 del Procurador General). De la fotocopia se desprende que la información en el boleto fue alterada; donde leía 235 se sobre-escribió en el 3 para que apareciera 8 y que leyera 285. Igualmente el dato correspondiente al folio, que leía 562, aparece alterado el 6 para leer 8. Mediante certificación expedida por el Registrador de la Propiedad (Exhibit II del Procurador General) se desprende que ese boleto no tiene relación con los documentos de la sucesión Hernández Reyes, sino con otro documento otorgado ante el Notario Cuevas Velázquez (las escritura número 30 del 14 de diciembre de 1989)."

Ante la falta de objeción al referido Informe por el abogado querellado o el señor Procurador General, el Tribunal acepta el mismo y adopta en su totalidad las determinaciones de hechos transcritas

anteriormente. Ante tales hechos, el ejercicio de nuestra función disciplinaria resulta inevitable.

II.

Conocido es que todo abogado en el desempeño de su gestión notarial está obligado a cumplir con lo dispuesto en la ley, en los Canones de Ética Profesional y con lo convenido con sus clientes. La inobservancia de esos deberes lo expone no sólo a una acción en daños por los perjuicios causados, sino a la jurisdicción disciplinaria por parte de este foro judicial. In re: Cruz Tolinche, 114 D.P.R. 207 (1983); In re: Albizu Merced, 136 D.P.R. 126 (1994).

Conforme a lo dispuesto en el Canon 12 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, todo abogado tiene el deber de desplegar las diligencias que sean necesarias, con prontitud, y asegurarse de que no se causen indebidas dilaciones, en los asuntos que le son encomendados. Además, de conformidad con las exigencias del Canon 18 del Código de Ética Profesional, el notario deberá, con relación a los documentos que se otorgan ante él, ser diligente y desplegar en cada caso su más profundo saber y habilidad. Id.

Los hechos determinados por el Comisionado Especial apuntan hacia una conducta engañosa por parte del abogado querellado hacia sus clientes y hacia este mismo Tribunal. Al omitir intencionalmente dar información correcta y veraz a sus clientes respecto al estado de los asuntos que le fueron encomendados por éstos, el querellado no solo violó el Canon 19 de Etica Profesional, sino que faltó al deber que le impone el Canon 35 de observar una conducta sincera y honrada hacia sus clientes. También incurrió en violación a dicho canon al ocultar a este Foro en sus comparecencias durante el trámite de este asunto, información relevante en cuanto a las gestiones que en repetidas ocasiones le ordenamos realizar y al ofrecer razones falsas para justificar la dilación o incumplimiento de tales gestiones. In re: Torres Torregrosa, Op. Per Curiam del 19 de agosto de 1999, 99 TSPR 127.

Por otra parte, reiteradamente hemos expresado que los abogados tienen la obligación ineludible de responder diligentemente a los requerimientos de este Tribunal. In re: Negrón Negrón, res. el 30 de

octubre de 1998, 98 TSPR 145; In re: Guemárez Santiago, res. el 30 de junio de 1998, 98 TSPR 102.  Después de todo, es su deber responder con diligencia.  In re: Negrón Negrón, supra; In re: Pérez Bernabé, 133 D.P.R. 361 (1993); In re: Colón Torres, 129 D.P.R. 490 (1991).

De igual forma, hemos sido enérgicos al señalar que no toleraremos la incomprensible y obstinada negativa de un miembro de nuestro Foro de cumplir con las órdenes de este Tribunal.  In re: Nicot Santana, 129 D.P.R. 717 (1992).  La indiferencia de un abogado en responder a las órdenes de este Tribunal en la esfera disciplinaria acarrea severas sanciones.  In re: Sepúlveda Negroni, res. el 25 de octubre de 1996, 141 D.P.R. __ (1996); In re: Melecio Morales, res. el 13 de febrero de 1998, 98 TSPR 11.

No cabe duda de que los hechos anteriormente expuestos reflejan claramente una crasa falta de diligencia y competencia por parte del licenciado Cuevas Velázquez.  Es incomprensible que éste lleve 21 años intentando corregir los defectos que impiden la calificación de la escritura en controversia, sin que al día de hoy su gestión profesional haya tenido éxito alguno.  Como bien señala el Procurador General "del expediente no surge evidencia alguna de que el [licenciado Cuevas Velázquez] haya efectuado un intento razonable por corregir los defectos notificados", más bien con el transcurso del tiempo ha complicado los mismos debido a su dejadez y falta de interés.

La conducta desplegada por el licenciado Cuevas Velázquez en el ejercicio de la profesión de abogado y notario merece la más severa sanción disciplinaria .  En adición, la desatención y el craso incumplimiento del licenciado Cuevas Velázquez con las órdenes de este Tribunal revela un alto grado de indiferencia por parte de éste respecto al cumplimiento de las obligaciones mínimas que le exige la profesión togada a cada uno de sus miembros.  Dicha actitud displicente causó dilaciones injustificadas e innecesarias, interfiriendo así indebidamente con nuestra función disciplinaria.  Por todo ello, se suspenderá al Lcdo. Ismael Cuevas Velázquez del ejercicio de la abogacía por tiempo indefinido.  Dicha suspensión tendrá efecto inmediato.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO**Error! Bookmark not defined.**

In re:

    Ismael Cuevas Velázquez          CP-97-3

SENTENCIA

San Juan, Puerto Rico, a 29 de junio de 2000

    Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia decretando la suspensión inmediata e indefinida del ejercicio de la abogacía del Lcdo. Ismael Cuevas Velázquez, a partir de la notificación de la presente Opinión. Se le impone el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los foros judiciales y administrativos. Deberá, además, certificarnos dentro del término de treinta (30) días a partir de su notificación el cumplimiento de estos deberes, notificando también al Procurador General.

    La Oficina del Alguacil de este Tribunal procederá, <u>de inmediato</u>, a incautarse de la obra y sello notarial de Ismael Cuevas Velázquez, luego de lo cual entregará la misma a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

    Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.

Isabel Llompart Zeno

Secretaria del Tribunal Supremo

Secretaria del Tribunal Supremo