per curiam:
El licenciado Rubén Hernández Rosario (li *106 cenciado Hernández) fue admitido al ejercicio de la abogacía el 3 de noviembre de 1960 y al ejercicio del notariado el 4 de noviembre de 1985.
Por asuntos relacionados a una demanda sobre “familia erciscundae y daños y perjuicios”, el matrimonio compuesto por el Sr. Goes Rodríguez Ongay y la Sra. Irene Morales Cruz (esposos Rodríguez-Morales), así como la señora Iris Rodríguez Ongay, presentaron unas quejas ante este Foro contra el referido abogado.
Veamos los hechos que dieron pie al ejercicio de nuestra jurisdicción disciplinaria.
I
La señora Esther Ongay Miranda falleció en estado de viudez el 12 de marzo de 1996. Al morir dejó como únicos y universales herederos a sus siete hijos: Iris, Marilú, Luz Esther, Darío, Goes, Rafael y Gudelia, todos de apellidos Rodríguez Ongay (la sucesión). Entre los bienes de su caudal hereditario se encontraba una propiedad inmueble, sujeta a división, sita en el municipio de Jayuya. Esta propiedad es, en esencia, el haber hereditario que origina el presente procedimiento disciplinario. Veamos.
El 20 de septiembre de 1997, Iris, Marilú, Luz Esther, Darío y Goes Rodríguez Ongay (los demandantes) interpusieron una demanda sobre “familia erciscundae y daños y perjuicios” contra sus hermanos Rafael y Gudelia Rodríguez Ongay (los demandados). En la referida acción civil, los demandantes alegaron, entre otras cosas, que el demandado, Rafael Rodríguez Ongay, había realizado actos de dominio sobre ciertos bienes de la sucesión sin obtener el consentimiento de los demandantes. Alegaron, además, que el demandado se había beneficiado económicamente con tales actuaciones y que había afectado adversamente los intereses económicos y propietarios de los demandantes miembros de la sucesión. Solicitaron la división de los bie *107 nes hereditarios y la restitución del dinero que obtuvo el demandado por sus actuaciones sobre las propiedades de la sucesión. Finalmente, solicitaron que se le ordenara al señor Rafael Rodríguez Ongay desistir de todo acto relacionado con dichas propiedades.
En la referida acción civil, los demandantes estuvieron representados por el Ledo. Jaime Rivera Sotomayor, mientras que los demandados contrataron los servicios profesionales del licenciado Hernández.
Luego de varios trámites procesales en dicho pleito, los esposos Rodríguez-Morales y la Sra. Iris Rodríguez Ongay presentaron el 28 y el 30 de marzo de 2002, respectivamente, las quejas AB-2002-106 y AB-2002-114 contra el licenciado Hernández.
De las quejas presentadas contra el licenciado Hernández surge que para el 20 de febrero de 2002 éste, fungiendo como notario mientras era abogado de los demandados en el pleito sobre “familia erciscundae y daños y perjuicios”, autorizó una escritura de compraventa mediante la cual uno de los demandantes en dicho pleito, el Sr. Goes Rodríguez Ongay, le vendió a su hermano, señor Rafael Rodríguez Ongay, demandado de autos, su participación hereditaria, consistente de una séptima parte sobre el bien inmueble sito en Jayuya. El precio convenido por las partes fue de diez mil dólares, de los cuales cinco mil dólares fueron entregados al señor Goes Rodríguez Ongay en el acto de otorgamiento de escritura, mientras que los restantes cinco mil se pagarían en un plazo de noventa días. Asimismo, se desprende de las referidas quejas que el licenciado Hernández autorizó dicha escritura de compraventa a espaldas del Tribunal de Primera Instancia, así como del licenciado Rivera Sotomayor, abogado de los demandantes en dicho pleito.
Los esposos Rodríguez-Morales indicaron en su queja que la Sra. Irene Morales Cruz era la tutora legal de su esposo, Sr. Goes Rodríguez Ongay, ya que éste está incapa *108 citado por ser veterano del conflicto de Vietnam. Indicaron, además, que al momento de otorgar la escritura de compraventa, este último entendió que, mediante la referida transacción notarial, su hermano le había prestado una cantidad de dinero. Finalmente, reseñaron que el precio de la compraventa, ascendente a la cantidad de diez mil dólares, era irrisorio y no correspondía al valor real de la participación hereditaria del Sr. Goes Rodríguez Ongay en la finca sita en Jayuya.
Por otra parte, la Sra. Iris Rodríguez Ongay indicó en su Queja de 30 de marzo de 2002 que el licenciado Hernández nunca le notificó sobre el otorgamiento de la escritura al abogado de los demandantes. Esgrimió, además, que al momento en que se llevó a cabo la referida compraventa, el Sr. Goes Rodríguez Ongay se encontraba confundido. Puntualizó que la actuación del licenciado Hernández era contraria a derecho y a los cánones del Código de Ética Profesional, ya que éste, alegadamente, actuó sólo movido por sus intereses personales. Finalmente, solicitó que se anulara la referida escritura de compraventa.
El licenciado Hernández presentó sus contestaciones a las referidas quejas el 18 de junio y el 21 de agosto de 2002. Explicó que actuó conforme se lo habían solicitado las partes otorgantes de la escritura de compraventa. Argüyó, además, que el abogado de los demandantes, licenciado Rivera Sotomayor, le informó antes del acto de otorgamiento de la escritura que los miembros de la sucesión estaban próximos a llegar a un acuerdo sobre la división de los bienes hereditarios. Asimismo, indicó que, alegadamente, el licenciado Rivera Sotomayor le comunicó su interés de concluir el pleito —trabado entre los miembros de la sucesión— a la brevedad posible, ya que éste había aceptado un empleo gubernamental en una agencia administrativa. Reseñó, entre otras cosas, que el Sr. Goes Rodríguez Ongay le expresó su deseo de dar por terminado todo lo relacionado *109 con su participación en la herencia de su madre, ya que interesaba regresar a Estados Unidos, lugar donde ubicaba su residencia. Expuso, además, que el acuerdo entre los hermanos otorgantes de la escritura de compraventa se llevó a cabo antes de la visita a su oficina y que éstos siempre le manifestaron su intención de realizar una compraventa. Puntualizó que las partes concernidas en dicho negocio jurídico tuvieron la oportunidad de leer el documento y que luego él, como alegadamente es su costumbre, leyó el documento en voz alta para que las partes pudieran aclarar cualquier duda. Asimismo, indicó que, a su entender, el Sr. Goes Rodríguez Ongay lucía ser una persona articulada en su vocabulario, de buenos modales y vestimenta impecable. Además, puntualizó que los hermanos otorgantes parecían tener una relación armónica. En consecuencia, el licenciado Hernández coligió que el Sr. Goes Rodríguez Ongay estaba capacitado para otorgar la escritura de compraventa. Finalmente, indicó que posteriormente le recomendó a su cliente que deshiciera la compraventa para evitar cualquier situación entre hermanos.
El 30 de agosto de 2002 se le refirió una copia del expediente de las quejas al Procurador General para la investigación e informe correspondiente. Así las cosas, el 27 de enero de 2003 el Procurador General presentó su informe. Luego de evaluar las contestaciones que hiciera el licenciado Hernández a las quejas presentadas en su contra, el Procurador General concluyó que las actuaciones del referido abogado eran inadecuadas y violaban los cánones del Código de Ética Profesional. Indicó que, de acuerdo con las contestaciones del licenciado Hernández, éste parecía ser, más que abogado de una de las partes en un pleito contencioso, un notario público que no observó diligencia ni fue precavido al examinar las circunstancias que rodeaban el negocio jurídico que autorizó. Por tratarse de la misma *110 transacción notarial, el 16 de mayo de 2003 consolidamos las quejas presentadas contra el licenciado Hernández.
El Procurador General formuló una querella contra el referido abogado el 23 de octubre de 2003. Le imputó los cargos siguientes:

CARGO I

El Ledo. Rubén Hernández Rosario incurrió en conducta en violación del Canon 28 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 28, cuando se comunicó, negoció y transigió con el Sr. Goes Rodríguez Ongay quien era parte adversa en el caso denominado: Iris, Marilú, Luz Esther, Darío y GoesU to-dos de apellidos Rodríguez Ongay, demandantes v. Rafael, Gudelial] ambos de apellidos Rodríguez Ongay, y otros, demandados, Civil Número LAC1997-0106, Sobre: Familia Eriscundae y Daños y Perjuicios, ante el Tribunal de Primera Instancia, Sala Superior de Utuado, en ausencia de su [abogado,] Ledo. Jaime Oscar Rivera Sotomayor.

CARGO II

El Ledo. Rubén Hernández Rosario incurrió en conducta en violación al Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX C. 18, cuando autorizó como notario público la escritura número 12 de Compraventa de Participación Hereditaria y Precio Aplazado del 20 de febrero de 2002[,] cuyos otorgantes eran el Sr. Goes Rodríguez Ongay como vendedor y el Sr. Rafael Rodríguez Ongay como comprador, siendo el primero parte adversa en el caso denominado: Iris, Marilú, Luz Esther, Darío y GoesU todos de apellidos Rodríguez Ongay, demandantes v. Rafael, Gudelia\j\ ambos de apellidos Rodríguez Ongay, y otros, demandados, Civil Número LAC19970106, Sobre: Familia Eriscundae y Daños y Perjuicios, ante el Tribunal de Primera Instancia, Sala Superior de Utuado, en ausencia y a espaldas del abogado del Sr. Goes Rodríguez On-gay, el Ledo. Jaime Oscar Rivera Sotomayor.

CARGO III

El Ledo. Rubén Hernández Rosario incurrió en conducta en violación a la Ley Notarial [de Puerto Rico], Ley Núm. 75 de 2 de julio de 1987 [(4 L.P.R.A. 2001 [sec.] y siguientes)], además del Reglamento Notarial de Puerto Rico de 1995 [(4 L.P.R.A. Ap. XXIV)], cuando autorizó como notario la escritura número 12 de Compraventa de Participación Hereditaria y Precio Aplazado del 20 de febrero de 2002, debido a que su conducta *111 infringió el deber de imparcialidad que se le impone a todo abogado en el ejercicio del notariado.

CARGO IV

El Ledo. Rubén Hernández Rosario incurrió en conducta en violación al Canon 20 al renunciar a la representación legal de su cliente en el caso legal civil número LAC1997-0106 sin antes cumplir con las exigencias éticas aplicables.

CARGO V

El Ledo. Rubén Hernández Rosario incurrió en conducta profesional en violación al Canon 35 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX C. 35, cuando faltó a su deber de sinceridad. (Énfasis en el original.) Querella, págs. 6-12.
El 23 de diciembre de 2003, el querellado presentó un escrito titulado Contestación a Querella. Argüyó que su única intención al autorizar la escritura de compraventa entre los hermanos Rodríguez Ongay fue resolver un problema familiar. Indicó, además, que su actuación respondió, en parte, a que el abogado de los demandantes en el pleito sobre “familia erciscundae y daños y perjuicios”, licenciado Rivera Sotomayor, le había informado que las partes en dicho caso estaban próximas a llegar a un acuerdo por estipulación. Esgrimió que, al momento de otorgar la escritura de compraventa de participación hereditaria, las partes habían llegado a un acuerdo para resolver el pleito pendiente ante el Tribunal de Primera Instancia. Indicó que el Sr. Goes Rodríguez Ongay le había informado su deseo de terminar el pleito trabado contra su hermano, Sr. Rafael Rodríguez Ongay, y que el pleito nunca debió haberse instado. Asimismo, el querellado indicó que las querellas fueron presentadas por personas que no fueron parte de la escritura de compraventa autorizada por él. De igual manera, señaló que el expediente del caso se le devolvió al Sr. Rafael Rodríguez Ongay para que contratara otra representación legal, y recibió por ello un recibo el 4 de abril de 2002. Indicó, además, que el Tribunal de Primera Instancia, ante el cual se ventilaba el pleito *112 entre los miembros de la sucesión Rodríguez Ongay, supo de la referida devolución ese mismo día, esto es, el 4 de abril de 2002. Indicó que, desde el 17 de mayo de 2002, el foro en cuestión había aceptado como abogado de récord de los demandados al Ledo. Domingo Donate Pérez. Puntualizó que desde el 23 de mayo de 2002 había cesado de representar a los demandados de autos. Esto en respuesta a los últimos dos cargos presentados por el Procurador General. Del expediente surge que el querellado presentó su renuncia a la representación legal de los demandados el 7 de julio de 2003. Finalmente, considera que su actuación constituyó un error de buena fe del que no obtuvo ningún lucro personal.
El 28 de abril de 2004 designamos como Comisionada Especial a la honorable Ygrí Rivera de Martínez, ex jueza del anterior Tribunal de Circuito de Apelaciones, para recibir y evaluar la prueba que presentarían las partes. La referida Comisionada Especial señaló una vista sobre el estado de los procedimientos para el 5 de agosto de 2004. Luego de una posposición a petición del querellado, la vista se efectuó el 30 de septiembre de 2005. En ésta, entre otras cosas, se analizó la querella y la prueba presentada por el Procurador General. Por su parte, el querellado expuso que era la primera vez que se enfrentaba a un proceso disciplinario en los cuarenta y tres años que llevaba activo en la profesión legal. Indicó que no se benefició con la transacción notarial que dio origen al proceso y que sólo recibió trescientos dólares en pago de honorarios. Asimismo, indicó que aún no se había podido anular la referida transacción, ya que el caso entre los miembros de la sucesión Rodríguez Ongay no había finalizado. Luego de varios incidentes procesales, se señaló vista para el 21 y 22 de junio de 2005. Luego de escuchar el testimonio del licenciado Rivera Sotomayor, quien compareció como testigo del Procurador General, se pautó la continuación del procedí *113 miento disciplinario para el 22 de septiembre de 2005. En esta fecha el querellado testificó, señalando como defensa lo mismo que había expresado anteriormente en sus contestaciones a las quejas y a la querella. Indicó que para la fecha en que se otorgó la escritura de compraventa se encontraba convaleciendo por ciertas operaciones a las que fue sometido durante los meses de agosto a diciembre de 2001.(1) Después de concederle un plazo a las partes para presentar ciertos documentos y memorandos de derecho, con el beneficio de toda la prueba presentada por las partes y los expedientes que se hicieron formar parte del proceso, la Comisionada Especial rindió su informe el 9 de junio de 2006.
Luego de un extenso y minucioso estudio, la Comisionada Especial concluyó que los cargos imputados en la querella —presentada por el Procurador General— fueron debidamente probados. Veamos.
La Comisionada Especial concluyó que el querellado violó el Canon 28 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, ya que se reunió con una parte adversa, el demandante Goes Rodríguez Ongay, representado por el licenciado Rivera Sotomayor en ausencia de éste, con el propósito de autorizar una escritura de compraventa de participación hereditaria. Determinó que la referida transacción notarial tenía como objeto un bien litigioso en el caso sobre “familia erciscundae y daños y perjuicios”, en donde el querellado representaba a la parte demandada.
Asimismo, concluyó la Comisionada Especial que el querellado violentó el Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, al autorizar una escritura de compraventa de participación hereditaria, en la que el precio convenido entre los otorgantes aparentaba ser mucho me- *114 nor de su valor real. En consecuencia, puntualizó que el querellado actuó en detrimento de una de las partes otorgantes del referido negocio jurídico.
La Comisionada Especial reseñó, además, que el querellado infringió la Ley Notarial de Puerto Rico, así como la Regla 5 de su reglamento, al autorizar la escritura de compraventa de participación hereditaria de 20 de febrero de
2002. Concluyó que con dicha actuación el querellado faltó a su deber ético de neutralidad e imparcialidad. Determinó que el querellado estaba impedido de actuar como notario en una transacción que tenía como objeto un bien litigioso en la demanda trabada ante el foro primario, en la cual el querellado representaba a una de las partes. Con tal actuación, consideró la Comisionada Especial, el querellado infringió la Regla 5 del Reglamento Notarial, supra, que preceptúa que el notario está impedido de representar como abogado a un cliente en un litigio y, a la vez, servir de notario en algún aspecto relacionado al caso. De igual manera, en el informe se determinó que el querellado quebrantó el Canon 20 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, puesto que, aunque alegó haber renunciado a la representación legal de la parte demandada desde el 23 de mayo de 2002, su renuncia no fue presentada ante el Tribunal de Primera Instancia hasta el 7 de julio de 2003.
Concluyó, además, que el querellado infringió el Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, ya que con sus actuaciones demostró poca sinceridad para con el abogado de la parte contraria, licenciado Rivera Sotomayor, así como para con el Tribunal de Primera Instancia que atendía el pleito sobre “familia escirscundae y daños y perjuicios”, en el cual el querellado era el representante legal de una de las partes. Según se desprende del informe, el querellado autorizó la escritura de compraventa de participación hereditaria sin comunicárselo al abogado de la *115 parte contraria o al foro primario. Finalmente, surge del referido informe que el querellado mintió sobre el alegado acuerdo entre las partes adversas para dividir los bienes hereditarios.
La Comisionada Especial expresó que la prueba presentada demostró que la incapacidad del Sr. Goes Rodríguez Ongay era de índole administrativa, por lo que estaba capacitado para entender el otorgamiento de la escritura de compraventa ante el querellado. Indicó, además, como posibles atenuantes, que el querellado fue admitido a la práctica de la profesión hace cuarenta y seis años, y nunca antes había enfrentado un proceso disciplinario y que éste aceptó su error, a lá vez que mostró arrepentimiento.
Con el beneficio de la discusión que antecede, nos compete resolver la acción disciplinaria de marras. Veamos.
III
En atención al primer cargo formulado por el Procurador General, el Canon 28 del Código de Etica Profesional, supra, preceptúa, en lo que aquí nos concierne, que un abogado no debe, en forma alguna, comunicarse, negociar ni transigir con una parte representada por otro abogado en ausencia de éste. El fin del referido Canon es impedir que los abogados de una de las partes hagan acercamientos inapropiados a personas que ostentan representación legal para obtener ventaja.(2) De esta forma se protege tanto el derecho de los clientes a obtener una representación legal adecuada, como el privilegio que cobija la relación entre el abogado y su cliente.(3) La prohibición que se plasma en este canon aplica irrespectivamente del nivel de educación de las partes y los motivos del abo *116 gado que intenta el contacto con la parted.(4) La jerarquía profesional de los abogados, en contraste con la ausencia de preparación del adversario lego, coloca al abogado en una posición de ventaja, permitiéndole inducir a error al adversario falto de su representación legal. Aun en casos de igualdad de circunstancias entre abogados y parte adversa, es conducta impropia comunicarse con dicha parte en ausencia de su representación legal.(5)
Por mandato del Canon 28 del Código de Ética Profesional, supra, el querellado estaba impedido de reunirse con el Sr. Goes Rodríguez Ongay en ausencia de su abogado, licenciado Rivera Sotomayor, para autorizar la Escritura de Compraventa Núm. 12 de 20 de febrero de 2002 con la que, alegadamente, estaba ayudando a resolver un problema familiar. Dicho encuentro se llevó a cabo mientras se ventilaba una demanda en la cual el querellado representaba a una parte adversa a los intereses del otorgante, Sr. Goes Rodríguez Ongay. Al así actuar, el querellado incurrió en una conducta antiética, violatoria del citado Canon 28.
Por su parte, el Canon 18 del Código de Ética Profesional, supra, impone a los abogados la obligación de defender con diligencia los intereses de su cliente. No obstante, para ello no puede recurrir a la violación de las leyes o a cometer engaños para sostener su causa.(6) Hemos indicado que, independientemente de las razones y motivaciones que pueda tener un abogado para llevar o no un caso, una vez asume la representación legal tiene, ante el cliente y ante los tribunales, la responsabilidad insustituible de llevar a cabo una gestión profesional con el más alto *117 grado de diligencia y competencia posible.(7) Recientemente reiteramos que las exigencias preceptuadas en el Canon 18 del Código de Ética Profesional, supra, se extienden a las funciones como notario.(8) Conforme a esta normativa el notario debe, en relación con los documentos que se otorgan ante él, ser diligente y desplegar en cada caso su más profundo saber y habilidad.(9) Por tal motivo, he-mos determinado que el notario no puede limitar su intervención rutinaria a leer o dar a leer documentos a los otorgantes y asegurarse de la identidad de sus personas y firmas, en un ritual aséptico pero vacío de la inteligencia y comprensión de los firmantes. Por el contrario, el notario está obligado, como parte de su deber de información, a darle a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que éstos comprendan el sentido del negocio, así como sus efectos y consecuencias, y se den cuenta del riesgo que corren en celebrarlo.(10)
En armonía con lo anterior, concluimos que el querellado infringió el Canon 18 del Código de Ética Profesional, supra, al autorizar una escritura de compraventa de participación hereditaria, mediante la cual el único beneficiado resultó ser su cliente en el caso que se ventilaba ante el Tribunal de Primera Instancia. Surge del expediente que la finalidad del referido negocio jurídico era liquidar la participación del Sr. Goes Rodríguez Ongay en la finca sita en Jayuya, a favor del cliente del querellado. Surge del expediente, además, que el precio convenido por las partes en dicho negocio era menor al valor real de la participación *118 hereditaria del vendedor en la referida finca. Se desprende del expediente, además, que dicha transacción se efectuó a espaldas del licenciado Rivera Sotomayor, abogado del Sr. Goes Rodríguez Ongay, precisamente porque el precio pactado entre las partes otorgantes perjudicaba a este último. No podemos avalar tal proceder.
En relación con la observancia —por parte de los notarios— de la Ley Notarial de Puerto Rico, así como de su reglamento, hemos indicado que una vez el notario no cumple con las obligaciones y los deberes que le impone la ley y el ordenamiento ético, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la función pública en él depositada.(11) Hemos resuelto que otorgar un documento notarial en contravención a nuestra ley notarial constituye una violación a los Cánones 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.(12) De igual manera, hemos resuelto que el notario público está obligado a proteger los derechos de las partes que comparecen ante él a otorgar documentos, por lo que debe ejercitar la neutralidad, que es incompatible con la misión del abogado de inclinar la balanza a favor de su cliente.(13)
Hemos concluido, además, que un abogado está impedido de autorizar como notario documentos de su cliente que están relacionados con un pleito en el cual éste lo representa y que está pendiente ante los tribunales.(14)
Del expediente surge que el querellado autorizó la Escritura de Compraventa Núm. 12 de 20 de febrero de 2002, mientras representaba los intereses de uno de los *119 otorgantes en un pleito contencioso ante el Tribunal de Primera Instancia. Asimismo, conviene apuntar que la referida transacción tenía como finalidad disponer de la participación hereditaria de una de las partes cuando eso mismo era lo que se estaba ventilando ante el foro primario. Al así obrar, el querellado infringió la Regla 5 del Reglamento Notarial, supra, que preceptúa que el notario está impedido de representar como abogado a un cliente en una litigación contenciosa y, a la vez, servir de notario en asuntos relacionados con el mismo caso.
Los cargos cuarto y quinto (violación a los Cánones 20 y 35), los examinaremos conjuntamente.
El Canon 20 del Código de Ética Profesional, supra, establece el procedimiento que debe seguir todo abogado que, habiendo representado a un litigante ante el foro judicial, desea dar por terminada dicha representación. El referido canon dispone que todo abogado que desea renunciar necesita obtener el permiso del tribunal para terminar dicha relación. Hasta tanto el abogado no sea formalmente relevado de sus funciones, aceptando el tribunal su renuncia, éste tiene el deber de continuar llevando a cabo su gestión profesional de forma competente y diligente.(15)
Por otro lado, el Canon 35 del Código de Ética Profesional, supra, impone a los abogados un deber de sinceridad y honradez ante los tribunales, frente a sus representados y al relacionarse con sus compañeros de profesión.(16) Hemos resuelto que no es sincero ni honrado utilizar medios que sean incompatibles con la verdad ni se debe inducir al juzgador a error utilizando artificios o una *120 falsa relación de los hechos o del derecho.(17) Hemos determinado que las obligaciones consagradas en el referido Canon constituyen normas mínimas de conducta que sólo pretenden preservar el honor y la dignidad de la profesión.(18) Por tal motivo, el abogado no sólo debe observarlas durante un pleito, sino en toda faceta en la cual se desenvuelva. El compromiso de un abogado con la verdad debe ser siempre incondicional, ya que la verdad es atributo inseparable de ser abogado. En consecuencia, se infringe el Canon 35, supra, con el simple hecho objetivo de faltar a la verdad, independientemente de los motivos para la falsedad.(19)
En su contestación a la querella formulada por el Procurador General, el querellado indicó, entre otras cosas, que para el 23 de mayo de 2002 había dejado de representar al señor Rafael Rodríguez Ongay en el pleito sobre “familia erciscundae y daños y perjuicios” que se ventilaba ante el foro primario. No obstante, surge del expediente que su renuncia a dicha representación fue solicitada al Tribunal de Primera Instancia por vez primera el 7 de julio de 2003. Resulta forzoso concluir que el querellado infringió lo preceptuado en el Canon 35 del Código de Ética Profesional, supra. De igual manera, el querellado infringió el Canon 20 del Código de Ética Profesional, supra, al otorgar la escritura de compraventa de 20 de febrero de 2002 sin antes haber renunciado a la representación legal de una de las partes otorgantes. No cabe duda que sus funciones como notario público y abogado de récord de una de las partes otorgantes —en un pleito contencioso contemporáneo al otorgamiento— son incompatibles, ya que se crea un conflicto de interés que trastoca la presunción de imparciali *121 dad que protege toda labor del notario y empaña la fe pública notarial.(20)
Hemos expresado que este tribunal no alterará las determinaciones de hecho del Comisionado Especial, salvo en casos donde surja que medió parcialidad, prejuicio o error manifiesto.(21) En este caso, tras un examen minucioso del informe preparado por la Comisionada Especial, así como la prueba que obra en el expediente, no hallamos razón por la que debamos intervenir con sus conclusiones.
Finalmente, hemos establecido que al determinar la sanción disciplinaria aplicable al abogado querellado, podemos tomar en cuenta factores tales como (a) la reputación del abogado en su comunidad; (b) el previo historial de éste; (c) si es su primera falta; (d) la aceptación de la falta y su sincero arrepentimiento; (e) si se trata de una conducta aislada, y (f) el ánimo de lucro que medió en su actuación, resarcimiento al cliente y cualesquiera otras consideraciones, ya bien atenuantes o agravantes que medien de acuerdo con los hechos.(22)
En el presente caso tomamos en consideración a favor del licenciado Hernández los atenuantes siguientes: (a) el abogado querellado lleva más de cuatro décadas en la práctica de la profesión de abogado y más de veinte años fungiendo como notario; (b) esta es la primera falta dentro de su descargo profesional en la abogacía o en la notaría; (c) los hechos no demuestran que el querellado tuviera ánimo de lucro personal, y (d) el querellado demostró genuino arrepentimiento.
Por todo lo anterior, consideramos procedente limitar la acción disciplinaria a una suspensión por el término de tres meses del ejercicio de la abogacía en nuestra jurisdicción, y apercibimos al querellado de que cumpla a cabali *122 dad, en el futuro, con los cánones del Código de Ética Profesional que rigen a los abogados y con la Ley Notarial de Puerto Rico y su Reglamento.

Se dictará sentencia de conformidad.

 Del expediente surge que los procedimientos ante la Comisionada Especial fueron pospuestos, en varias instancias, porque el querellado se encontraba indispuesto de salud.

 In re Martínez Lloréns, 158 D.P.R. 642 (2003).

 íd; In re Andréu, Rivera, 149 D.P.R. 820 (1999).

 In re Martínez Lloréns, supra; In re Soto Cardona, 143 D.P.R. 50 (1997).

 In re Andréu, Rivera, supra, citando la obra de la profesora Sarah Torres Peralta, El Derecho Notarial Puertorriqueño, San Juan, Pubs. STP, 1995.

 In re Vélez Barlucea, 152 D.P.R. 298 (2000).

 íd.; In re Acevedo Álvarez, 143 D.P.R. 293 (1997); In re Pagán Hernández, 141 D.P.R. 113 (1996).

 In re Fernández de Ruiz, 167 D.P.R. 661 (2006); In re González Vélez, 156 D.P.R. 580 (2002).

 In re Fernández de Ruiz, supra, citando a In re Albizu Merced, 136 D.P.R. 126 (1994).

 In re Fernández de Ruiz, supra, citando a Chévere v. Cátala, 115 D.P.R. 432 (1984).

 In re Charbonier Laureano, 156 D.P.R. 575 (2002); In re Capestany Rodríguez, 148 D.P.R. 728 (1999).

 In re Charbonier Laureano, supra, citando a In re Vera Vélez, 148 D.P.R. 1 (1999).

 B. & L., Inc. v. P.R. Cast. Steel Corp., 114 D.P.R. 808 (1983).

 In re Colón Ramery, 138 D.P.R. 793, 797 (1995).

 In re Franco Rivera, 169 D.P.R. 237 (2006), citando a Lluch v. España Service Sta., 117 D.P.R. 729 (1986).

8) In re Fernández de Ruiz, supra, citando a In re Martínez, Odell I, 148 D.P.R. 49 (1999).

 In re Fernández de Ruiz, supra, citando a In re Silvagnoli Collazo, 154 D.P.R. 533 (2001), e In re Aguila López, 152 D.P.R. 52 (2000).

 In re Ortiz Martínez, 161 D.P.R. 572 (2004).

 In re Fernández de Ruiz, supra.

 In re Colón Ramery, supra.

 íd., citando a In re Moreira Avillán, 147 D.P.R. 78, 86 (1998).

 In re Vélez Barlucea, supra.