EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Carlos E. Soto Colón <br> también conocido por <br> Carlos E. Soutto Colón | Queja <br><br> 2001 TSPR 166 <br><br> 155 DPR \_\_\_\_ |

Número del Caso: AB-1998-140, CP-2000-4, AB-2001-17,
                 AB-2001-24, AB-2001-41 y AB-2001-137


Fecha: 9/noviembre/2001


Oficina del Procurador General:

                          Lcda. Cynthia Iglesias Quiñones
                          Procuradora General Auxiliar

                          Lcda. Edna Evelyn Rodríguez
                          Procuradora General Auxiliar

                          Lcda. Minnie H. Rodríguez López
                          Procuradora General Auxiliar



Colegio de Abogados de Puerto Rico:
                          Lcda. María de Lourdes Rodríguez



Abogado de la Parte Querellada:
                          Por Derecho Propio



Materia: Conducta Profesional
         (La suspensión es efectiva a partir del 9 de diciembre de 2001, fecha
         en que se le notificó al abogado el Per Curiam y Sentencia)

         Este documento constituye un documento oficial del Tribunal
         Supremo que está sujeto a los cambios y correcciones del proceso
         de compilación y publicación oficial de las decisiones del
         Tribunal. Su distribución electrónica se hace como un servicio
         público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

    Carlos E. Soto Colón
    también conocido por
    Carlos E. Soutto Colón

                    AB-1998-140
                    CP-2000-004
                    AB-2001-17
                    AB-2001-24
                    AB-2001-41
                    AB-2001-137

PER CURIAM

San Juan, Puerto Rico, a 9 de noviembre de 2001

Pendientes de resolverse ante este Tribunal, existen seis procedimientos disciplinarios en contra del Lcdo. Carlos Soto Colón (en adelante Lcdo. Soto o el querellado), también conocido como Carlos Soutto Colón, CP-2000-4, AB-98-140, AB-2001-017, AB-2001-024, AB-2001-041, AB-2001-0137. A continuación una breve exposición de los hechos que originaron cada uno de los procedimientos.

A.

El caso de conducta profesional CP-2000-4, se originó cuando el Lcdo. Carlos Mondríguez Torres, por sí y en representación de la Sociedad de bienes Gananciales compuesta por él y su esposa, presentó demanda de Interdicto Preliminar y Permanente, Incumplimiento de Contrato, y Daños y

Perjuicios en contra del Lcdo. Soto, caso civil núm. HDP95-0039, ante el Tribunal de Primera Instancia, Subsección Superior, Sala de Humacao. El Lcdo. Soto, por su parte, presentó demanda de Interdicto Preliminar y Permanente en contra el Lcdo. Mondríguez, HPE95-0015, ante el mismo tribunal. Estos casos fueron consolidados.

El Hon. Francisco Viera Cruz, Juez Superior del antedicho tribunal, remitió a este Foro la demanda y demás documentos anexados por el Lcdo. Mondríguez. En cumplimiento con nuestras órdenes, se nos mantuvo informado de las incidencias procesales.

Luego de varios trámites dentro del pleito, se le anotó la rebeldía al querellado, por no haber formulado alegación responsiva alguna contra la demanda.

El 24 de febrero de 1997, el Hon. Carlos Soler Aquino, en ese entonces Juez Superior de ese tribunal, dictó sentencia, la cual es final y firme por no haber sido recurrida conforme a derecho.[1]

Por otro lado, mediante un recurso instado separadamente, el querellado presentó Solicitud o Modificación de Acta, ante el Tribunal de Primera Instancia, Subsección de Distrito, Sala de San Juan, para cambiar su apellido paterno con el cual aparece inscrito en el Registro Demográfico.[2] El tribunal dictó resolución para ordenar que a partir de esa fecha, 3 de octubre de 1997, el nombre del letrado apareciera como Carlos E. Soutto Colón. El 21 de mayo de 1998, ese tribunal emitió sentencia enmendada para ordenar que a partir de ese día, el acta de nacimiento del querellado apareciera como Carlos E. Soutto Colón, y para que dicha modificación solo afectara al querellado y no a su padre.

A raíz de todo ello, el 6 de abril de 2000, el Procurador General de Puerto Rico, en cumplimiento con nuestra resolución de 5 de noviembre de

---

[1] La sentencia adversa al querellado fue notificada a las partes el 3 de marzo de 1997. El Lcdo. Soto Colón recurrió al Tribunal de Circuito de Apelaciones que desestimó el recurso por no haberse perfeccionado, debido a la ausencia del correspondiente apéndice requerido en el Reglamento del tribunal apelativo. El querellado acudió a este Tribunal; el recurso fue denegado. El 28 de agosto de 1997, el querellado presentó una moción de relevo de sentencia ante el Tribunal de Primera Instancia; ésta fue declarada no ha lugar.

1999, presentó querella contra el Lcdo. Soto. En ella le imputa haber incurrido en conducta profesional antiética al omitir informarle a este Tribunal su cambio de apellido paterno, y haber violado el Preámbulo y los Cánones de Ética Profesional: 12, 9, 19, 20, 18, 23, 35, 38, 4 L.P.R.A. Ap.IX.

Mediante mandamiento debidamente notificado, el 9 de mayo de 2000, este Tribunal le ordenó al querellado, a tenor con la Regla 14(f) de nuestro Reglamento, contestar la querellada dentro del término de quince (15) días.

El 1 de junio de 2000, el querellado solicitó una prórroga para contestar la querella, lo cual le fue concedida, otorgándosele un plazo de treinta (30) días. Sin embargo, el 5 de julio de 2000, el Lcdo. Soto pidió una nueva extensión del término para contestar, por sesenta (60) días adicionales. Concedimos la nueva prórroga solicitada, pero apercibimos al Lcdo. Soto que de no recibirse el escrito en término, se continuarían los procedimientos en su contra sin el beneficio de su contestación, situación que podría conllevar sanciones disciplinarias.

Nuevamente incumplió con nuestras resoluciones, y presentó el 1 de septiembre de 2000, la tercera moción de prórroga. El 22 de septiembre de 2000 denegamos extender el plazo, y ordenamos que se continuaran los procedimientos en su contra, interpretando que la falta de contestación a la querella presentada por el Procurador General, equivaldría a una negación de los hechos y cargos imputados. En adición, se nombró como Comisionada Especial a la Hon. Ygrí Rivera de Martínez, ex juez del Tribunal de Circuito de Apelaciones para que recibiera la prueba y rindiera un informe con sus determinaciones de hechos y de derecho.[3]

A la celebración de la Conferencia con Antelación a la Vista en sus méritos, comparecieron la Procuradora Auxiliar y el querellado, quién expresó que el Lcdo. Johnny Elías no lo representaría en esta etapa de los procedimientos, pero que acudiría a la vista final, a pesar de no haber presentado moción asumiendo representación legal. Se le concedieron cinco

---

[2] Caso civil núm. 977873 (506).
[3] Haciendo caso omiso a nuestra orden, el 2 de octubre de 2000, el querellado presentó su contestación a la querella. Esta fue considerada como no

(5) días al querellado para que el Lcdo. Elías se expresara con respecto a la representación legal del querellado. No se presentó ninguna moción al respecto.

A la vista en sus méritos compareció la Procuradora Auxiliar pero no el querellado ni abogado alguno en su representación.

Luego de varios incidentes procesales, la Hon. Comisionada Especial, presentó su informe, cuyas determinaciones de hechos son las siguientes.

1. El querellado, Lcdo. Carlos E. Soto Colón, fue admitido al ejercicio de la abogacía, el 13 de enero de 1992 y al ejercicio de la notaría el 8 de noviembre de 1996.

2. El 23 de febrero de 1994, el querellado comenzó a trabajar en la Oficina del Lcdo. Mondríguez Torres.

3. Dichos licenciados, realizaron una serie de acuerdos, entre los cuales figuraba la entrega al querellado, por parte del Lcdo. Mondríguez, de alrededor de cuarenta (40) casos para que tramitara las acciones correspondientes en representación de la oficina y le otorgara al Lcdo. Mondríguez el cincuenta por ciento (50%) de lo que obtuvieran en honorarios de abogado.

4. A su vez, el querellado le haría entrega del cincuenta por ciento (50%) de honorarios de los casos obtenidos por él.

5. Por considerar que el querellado había dejado de cumplir con los acuerdos entre ambos, el Lcdo. Mondríguez presento la demanda que originó este Per Curiam.

6. De la sentencia en rebeldía dictada por el Tribunal de Instancia, el 24 de febrero de 1997, surgen extensas determinaciones de hechos, que la Comisionada Especial reprodujo en su informe.

Las determinaciones de hechos del Tribunal de Primera Instancia más relevantes a este procedimiento son:

"8. Desde el mes de julio de 1994 el licenciado Mondríguez trató infructuosamente de reunirse con el licenciado Soto a los fines de discutir el estado de los casos a su cargo, a lo que el demandado respondía que estaba preparando un informe detallado de dichos casos.

presentada por la Comisionada Especial, en virtud de la orden especificada en el párrafo que antecede.

Antes de ese mes, el Licenciado Soto discutía frecuentemente sus casos con el Lcdo. Mondríguez y tenía a éste informado del desarrollo de los mismos. Sin embargo, a pesar de que el licenciado Mondríguez le requería informes por escrito sobre el estado y progreso de los casos a su cargo, solo entregó a éste el informe correspondiente a abril de 1994.

9. Durante el verano de 1994 el licenciado Soto mencionó que abriría una cuenta bancaria en el Oriental Bank & Trust, sucursal de Las Piedras, para depositar sumas pagadas por los clientes de la oficina en los casos a su cargo, por concepto de gastos y honorarios a lo cual el licenciado Mondríguez accedió, con la condición de que se auditara dicha cuenta con la frecuencia que fuera necesaria. Sin embargo, el licenciado Soto nunca estuvo disponible para auditar la cuenta.

10. Indicando que se proponía trabajar en horas nocturnas y en fines de semana en los expedientes a su cargo, el Lcdo. Soto se llevó, allá para septiembre de 1994, de la oficina, un gran número de dichos expedientes, para su residencia, según indicó.

11. Desde que el licenciado Soto comenzó a llevarse los expedientes a su cargo, poco a poco dejó también de asistir a la oficina. Igualmente dejó de comparecer a las vistas previamente señaladas por el tribunal en los casos a su cargo. También dejó de cumplir con diversas órdenes emitidas por varios Tribunales.

12. A partir de septiembre y durante el mes de octubre dejó de comunicarse con sus clientes, los cuales ni recibieron información sobre sus casos ni fueron debidamente atendidos por éste.

13. El Lcdo. Soto comenzó a evadir al Lcdo. Mondríguez. Las pocas veces en que se encontraban el Lcdo. Mondríguez le requería los informes de los casos a su cargo (informe de estado y progreso), informe económico (de ingresos y gastos) y la información pertinente para auditar la cuenta bancaria. El Lcdo. Soto respondía que estaba preparando informes detallados de los casos y un informe de la cuenta que se proponía a entregar próximamente. A preguntas del Lcdo. Mondríguez, sobre si tenía algún problema, el Lcdo. Soto respondía en la negativa.

14. Numerosos clientes que habían sido citados a la oficina por el Lcdo. Soto para el trámite rutinario de sus casos esperaron en vano por éste en las oficinas al acudir a sus citas.

15. El Lcdo. Mondríguez se vio impedido de evitar o corregir la situación expuesta en vista de que no tenía acceso a los expedientes, por habérselos llevado el licenciado Soto y el que sobreviniera la ausencia de comunicación con el licenciado Soto: (1) ya no se le conseguía en la casa de su madre en Las Piedras, donde antes vivía, y (2) no había dejado otra dirección o teléfono que no fuera el de su progenitora y su abuelita.

16. El día 3 de noviembre de 1994, el licenciado Mondríguez se encontró al licenciado Soto saliendo del Centro Judicial de Humacao, le hizo señas para que detuviera su vehículo y le requirió una explicación de su comportamiento. Acordaron reunirse ese mismo día a las 2:00 de la tarde, en las oficinas del licenciado Mondríguez para discutir la situación. El licenciado Soto llamó al licenciado Mondríguez a eso de las 2:00 de la tarde y le indicó que llegaría más tarde a la reunión. Sin embargo, no compareció ni excusó su incomparecencia. El Lcdo. Mondríguez esperó por el licenciado Soto hasta casi las 6:00 de la tarde y redactó con fecha de ese día una

carta mediante la cual despedía al demandado de su oficina. La carta fue enviada al Lcdo. Soto varios días después. Se admitió también como parte del Exhibit 8, el acuse de recibo del envío.

17. En la carta de despido se le requirió al Lcdo. Soto que se personara y suscribiera una moción sobre renuncia de representación profesional donde de paso se informaba que el Lcdo. Mondríguez asumiría la representación profesional del cliente. Se le requirió además, la devolución de los expedientes en su poder.

18. El Lcdo. Soto Colón nunca fue a la oficina a firmar dichas mociones ni a devolver los expedientes en su poder.

19. Los casos de Luis Boria v. Ethicon-Johnson & Jonson, civil número CD94-1338 (401) del Tribunal de Distrito, Sala de Caguas, y el de Isabel del Valle Garay v. Bauer & Black, Inc., civil número CD93-1609, del Tribunal de Distrito, Sala de Humacao, en ocasión de llamarse para vista en su fondo durante la primera semana de noviembre de 1994, fueron desestimados dada la incomparecencia del licenciado Soto. En ninguno de los casos ni siquiera el licenciado Soto había informado al cliente que ese día estaba señalada la vista de su caso.

20. Varios abogados llamaron a la oficina quejándose de que el Lcdo. Soto no había contestado interrogatorios, no contestaba sus cartas y mensajes, ni comparecía a deposiciones.

21. El día 15 de noviembre de 1994, el Sr. Francisco Guzmán García, cliente del Lcdo. Soto Colón y quien tenía una reclamación por despido injustificado en el caso de Francisco Guzmán García v. Pizza Hut, civil número CD93-340, en el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Río Grande, visitó las oficinas del licenciado Mondríguez exponiendo que estaba preocupado porque el Lcdo. Soto Colón no contestaba sus mensajes ni lo citaba para prepararlo para juicio, siendo ésta su primera experiencia en un Tribunal de Justicia.

22. El Lcdo. Mondríguez atendió al cliente, pidió a su secretaria Sharon Rodríguez el expediente del caso y la secretaria le informó que ese expediente era uno de los expedientes que se había llevado el Lcdo. Soto. Se le explicó al cliente que en la oficina se desconocía del paradero del licenciado Soto, quien hacía algún tiempo había dejado de vivir en Las Piedras, sin dejar su nueva dirección. Sólo tenía de éste el número de su teléfono celular, el cual siempre estaba apagado. La secretaria llamó en innumerables ocasiones a dicho teléfono hasta que por fin consiguió al Lcdo. Soto. El licenciado Soto habló con el cliente y le dio varias excusas no aceptadas por éste. Cuando el cliente pasó el teléfono al Lcdo. Mondríguez para que hablara con el Lcdo. Soto, éste último cortó la comunicación.

23. La secretaría [sic] le informó al Lcdo. Mondríguez que el Lcdo. Aníbal Escanellas hacia [sic] varios días le estaba buscando dejando mensajes por teléfono al Lcdo. Soto Colón en relación a este caso.

24. En comunicación con el licenciado Escanellas, el Lcdo. Mondríguez le explicó la situación y le pidió de favor que se allanara a una suspensión en lo que se localizaba al Lcdo. Soto, se recuperaba el expediente, y asumía representación legal del cliente, puesto que así había sido solicitado por el cliente. Cuando el Lcdo. Mondríguez le explicó al Lcdo. Escanellas que no sabía donde conseguir al Lcdo. Soto, porque se había mudado, el Lcdo. Escanellas le contestó que casualmente había visto al Lcdo. Soto viviendo en su Condominio en Colina Real, de Cupey. El Lcdo. Escanellas se allanó a la suspensión, preparando entonces el licenciado Mondríguez, una moción notificando lo anterior al Tribunal de Distrito. Sala de Río Grande y solicitando

de ese modo que el licenciado Mondríguez pudiera representar al cliente en la vista señalada.

25. La Honorable Angela Luisa de Jesús expidió la orden el día 15 de noviembre de 1994, y el día 17 de noviembre de 1994, fue diligenciada la misma por el Sr. José Salvador Torres Cabello en las Oficinas Administrativas del Condominio Colina Real.

...

32. El Lcdo. Mondríguez se reunió con la directiva de los trabajadores demandantes que representaba cerca de 600 de éstos. Los miembros de la directiva le informaron que el Lcdo. Soto Colón le había pedido a cda [sic] uno $50.00 para gastos. Por lo que según sus cálculos el Lcdo. Soto tenía en su poder cerca de $29,000 en giros a su nombre y dinero en efectivo. (Algunos pagaron en efectivo pero conservaron recibo de la transacción).

33. El Lcdo. Mondríguez le explicó a los trabajadores que no tenía un solo informe del Lcdo. Soto atinente a los gastos de ese caso. Los trabajadores le indicaron al Lcdo. Mondríguez que el Lcdo. Soto decía en cada reunión convocada por él para cobrarle a los trabajadores que ese dinero estaba seguro, pues él lo iba a depositar en una cuenta que había abierto en el Oriental Bank & Trust. El Lcdo. Soto convocaba dichas reuniones en Canchas Bajo Techo y Centros Culturales y/o Comunales debido a lo nutrido de los grupos asistentes. Nunca informó al Lcdo. Mondríguez la fecha de las reuniones y cuando fue requerido por éste le indicara fecha y hora de la reunión pautada en la cancha bajo techo de Gurabo no quedó otra alternativa que informarle. Cuando el Lcdo. Mondríguez llegó a la reunión ya la misma había concluido, dándose cuenta el Lcdo. Mondríguez que el Lcdo. Soto le había dicho que la reunión se celebraría una hora después de la hora que realmente había sido convocada por el Lcdo. Soto. El Lcdo. Mondríguez le preguntó a un grupo de 5 ó 6 trabajadores que encontró conversando frente a la cancha por la naturaleza de la reunión y éstos le dijeron que el abogado le explicó aceleradamente que ellos tenían derecho a demandar al patrono siempre y cuando le entregaran en ese momento $50.00 cada uno. Explicaron además que cuando el Lcdo. Soto Colón recibía el dinero le dijo que ese dinero él lo iba a depositar en una cuenta bancaria que se había abierto en el Oriental Bank & Trust y que el dinero sólo se iba a usar para los gastos del caso. Explicaron los trabajadores que al recibir el dinero el Lcdo. Soto se marchó de la cancha con mucha prisa. Cuando el demandante se identificó como el Lcdo. Mondríguez, dos de los trabajadores presentes le manifestaron que estaban el (sic) la creencia de que el abogado que iba a dirigir la reunión era el Lcdo. Mondríguez, pues así se les había informado.

34. Al advenir en conocimiento de que el Lcdo. Soto había dejado de trabajar en la oficina del Lcdo. Mondríguez, la directiva acordó enviarle al Lcdo. Soto una carta requiriendole [sic] la devolución del dinero por él recaudado para gastos, la que fue preparada de inmediato, suscrita por los directores y enviada con acuse de recibo al Lcdo. Soto el día 11 de noviembre de 1994.

35. Hasta el día de hoy, el Lcdo. Soto no ha devuelto el dinero.

...

38. De Oriental Leasing se le indicó al Lcdo. Mondríguez que el Lcdo. Soto había solicitado un arrendamiento financiero para un vehículo de motor Honda Accord 1994, diciendo que trabajaba en la oficina y se ganaba $52,000.00. El Lcdo. Mondríguez indicó que el Lcdo. Soto nunca se ganó más de $1,200.00 en un mes a lo que respondieron

de Oriental Leasing que tenían una carta firmada por el Lcdo. Mondríguez certificando lo antes dicho. El Lcdo. Mondríguez solicitó y le fue enviada copia de la carta.

39. Debido a que el Lcdo. Mondríguez nunca había suscrito una carta diciendo que el Lcdo. Soto se ganaba $52,000.00 en su oficina, presentó ante la policía una querella por el delito de falsificación contra el Lcdo. Soto que fue referida posteriormente al Fiscal Rubio Paredes, Fiscal Auxiliar adscrito a la Fiscalía del Distrito de Humacao.

40. Examinados los expedientes entregados por el Lcdo. Soto y otros que estaban a su cargo, pero fueron devueltos por éste a finales de octubre de 1994, se hicieron los siguientes hallazgos:

a. El Licenciado Soto retuvo para sí en el caso de Paredes y otros v. Redondo Construction y otros, civil número HDP95-0078, unos $400.00 para gastos que nunca fueron utilizados para esos fines. Por ese caso en particular se presentó demanda de cobro contra el Licenciado Soto, (Nereida Paredes y otros v. Carlos Edgardo Soto Colón, civil número CM95-08, Tribunal de Primera Instancia, Sala Municipal de Las Piedras) recayendo sentencia declarando con lugar la demanda.

b. El Licenciado Soto no entregó documentos, evidencia e información valiosa de los clientes que son necesarios en la tramitación de los pleitos. Tales son los casos de Jorge Ayala y otros v. Westinghouse; Noelia Rivera y otros v. Javier Reyes Mulero, y otros; Juan francisco [sic] Rivera Díaz y otros v. Melba Iris Sierra Torres y otros casos más.

c. El Lcdo. Soto no entregó ni rindió cuentas sobre $1,000.00 que fueron cobrados por él en el caso de Enrique Dávila Vargas y que pertenecen al cliente.

41. Al presente, el licenciado Soto Colón retiene los expedientes de los ex-empleados de la planta de Westinghouse de San Lorenzo, quienes le entregaron $50.00 para gastos cada uno (alrededor de 200 ex-empleados) y documentos relacionados con su reclamación.
...

44. Salvo los cheques que fueron pagados al licenciado Carlos Mondríguez por concepto de su participación de honorarios, que ascienden a $1,500.00, los demás cheques girados contra depósitos que provenían de recaudos por concepto de honorarios o retención de gastos de oficina del licenciado Mondríguez, no corresponden a los propósitos para los cuales estaban destinados esos fondos.

45. Si restamos de las sumas depositadas ($36,621.01), lo pagado al licenciado Mondríguez de dichos depósitos, forzoso es concluir que el licenciado Soto retuvo para sí $35,041.01, considerando tan sólo los fondos depositados en dicha cuenta.

...

50. Concluimos que el licenciado Soto incumplió su contrato de trabajo con el licenciado Carlos Mondríguez y al hacerlo de forma culposa o intencional se apropió de por lo menos $35,000.00 de los fondos de una cuenta destinada para depositar dinero de gastos y honorarios de abogados que no le pertenecía.

8. Respecto al cambio de apellido, concluye la Hon. Comisionada Especial, que el 3 de octubre de 1997, el Tribunal de Primera Instancia,

Sala Superior de San Juan, emitió resolución que a partir de ese día su nombre figuraría como Carlos Soutto Colón. El 21 de mayo de 1998, dicho foro ordenó que se corrigiera el acta de nacimientos.

9. En el procedimiento sobre Petición de Quiebra presentado ante el foro federal bajo las disposiciones del Capítulo 13 del Código de Quiebras Federal, 11 USC 362 (Caso 98-13792), el licenciado Soto no expresó su cambio de apellido.

B.

La queja AB-98-140 fue presentada a este Tribunal por el Sr. Carlos Cruz Oliva, de la empresa Elmendorf Color, Inc. El propósito principal de la queja era presentarle a este Foro copia de la Sentencia detallada anteriormente. El Sr. Cruz Oliva señala además el mal desempeño del Lcdo. Soto en el caso Nereida Rivera v. Elmendorf Colors, Inc., Civil Núm. EPE 96-0399, en el Tribunal de Primera Instancia, Sala Superior de Caguas.

La Oficina del Procurador presentó moción informativa el 10 de mayo 1999, a través de la cual nos solicitó que paralizáramos la queja, ya que el querellado era el representante legal de Nereida Rivera, en el caso arriba mencionado, el cual teniendo señalada vista evidenciaria para los días 19-23 de julio de 1999, una determinación o recomendación podría incidir negativamente en éste. El 26 de mayo ordenamos la paralización de esta queja hasta que se resolviera el caso EPE96-0339.

Después de varias órdenes para que las partes nos informen del estado procesal del caso, el 29 de mayo de 2001 emitimos otra resolución en el mismo sentido, para que las partes se expresaran en un término de treinta (30) días.

Compareció el quejoso pero no así el querellado. En vista de su incumplimiento con nuestra orden, emitimos una resolución concediéndole diez (10) días adicionales para que cumpliera con nuestra resolución de 29 de mayo, bajo el apercibimiento de que su incumplimiento podría acarrear sanciones disciplinarias, incluyendo la suspensión del ejercicio de la abogacía. Dicha resolución fue diligenciada personalmente, el 15 de agosto

de 2001. Hasta el presente, el querellado no ha cumplido la orden ni se ha excusado por ello.

C.

La queja AB-2001-17 fue presentada el 31 de enero de 2001, por el Sr. Antonio Seda Echeverría. En ella expresa, que el 23 de junio de 2000, contrató los servicios profesionales del Lcdo. Soto Colón para que lo representara en un caso de daños y perjuicios en contra de Hera Development. El quejoso le ha entregado, a través de un giro postal al querellado, la suma de seiscientos dólares ($600), y sucesivamente le entregó cuatro cuotas de cien dólares ($100) para un total de mil dólares ($1,000), como pago a sus servicios profesionales. El querellado no se ha comunicado con el Sr. Seda desde la fecha en que se formalizó el contrato.

El quejoso, ha tratado en diversas oportunidades de comunicarse con el Lcdo. Soto, pero el número de teléfono celular otorgado por éste ha sido desconectado. A través del Colegio de Abogados, obtuvo un número de teléfono perteneciente a una tal Daisily Negrón, quien le informó ser prima del querellado, pero que éste no residía en esa dirección. Esta última le facilitó el número telefónico de la Sra. Jenny Colón, tía del querellado, quien indicó que a pesar de que el querellado no vivía en esa dirección lo veía regularmente por lo que le daría el mensaje.

El Colegio de Abogados, le suministró al querellado un número de apartado postal, al cual el quejoso le envió una carta solicitándole se comunicara con él, y que de no hacerlo en veinte días se consideraba rescindido el contrato, por lo cual el querellado debería devolverle el dinero. El correo trató de entregar la carta en tres fechas distintas pero resultó infructuoso.

El 14 de febrero de 2001, le notificamos al querellado la queja para que compareciera a defenderse.

El 26 de marzo de 2001, en cumplimiento de la Regla 14 (d) del Reglamento de este Tribunal, referimos copia del expediente al Procurador General para la correspondiente investigación e informe.

El 25 de abril de 2001, compareció el Procurador General para informar que se le remitió por segunda vez copia de la querella al Lcdo. Soto a las oficinas de Santiago, Malavet & Santiago, Calle Sagrado Corazón 470 en Santurce, la cual fue devuelta porque el querellado ya no rendía servicios en esas oficinas desde julio de 2000, y a la vez facilitaron otras direcciones, física y postal, que tenían conocimiento en esas oficinas.[4] En este escrito nos solicita, el Hon. Procurador un término adicional para que conteste el Lcdo. Soto, y para la preparación de su informe. Procedimos de acuerdo a lo solicitado en la resolución de 8 de mayo de 2001. Copia de esta resolución se diligenció personalmente al querellado en la Urbanización Inmaculada en Las Piedras, el 18 de mayo de 2001.

El 19 de junio de 2001, comparece ante nos la Oficina del Procurador General, quien expresa que del silencio del querellado se deducen como ciertas las alegaciones del Sr. Seda, "de que el abogado se apropió de su dinero bajo falsa representación." Por ser dicha conducta constitutiva de delito, la Oficina del Procurador General, refirió el asunto a la Oficina de Investigaciones y Procesamiento Criminal del Departamento de Justicia. Dicho informe fue notificado a la Urbanización de Inmaculada por correo certificado con acuse de recibo, la cual fue devuelta.

D.

El procedimiento disciplinario AB-2001-24, se originó el 7 de febrero de 2001, por una queja presentada por las Sras. Jenny López, Lisset Oland Sánchez y Crecencia Santos Martínez.

De dicha queja surge que en el mes de abril de 2000, el querellado se personó en la residencia de la Sra. López, para que las querellantes y otras personas, firmaran un contrato de servicios legales a nombre del Bufete Santiago, Malavet & Santiago a quien éste representaba. Esa misma noche se le entregó la cantidad de dos mil dólares ($2,000) en cheques y giros a nombre del Lcdo. Santiago Malavet. El querellado cambió los cheques sin la autorización del Lcdo. Santiago Malavet, quien ni tenía conocimiento de la

---

[4] 1) P.O. BOX 195537, San Juan, P.R. 00919-5537; 2) Urbanización Inmaculada, calle 3 Núm. 56, Las Piedras, P.R. 00771; y 3) P.O. BOX 259, Las Piedras,

celebración del contrato. Cuando estas personas se presentaron al Bufete Santiago, Malavet & Santiago, tuvieron conocimiento de que el Lcdo. Soto no trabajaba ya con la firma. Al comunicarse con el Lcdo. Soto, éste se comprometió al devolver el dinero.[5]

En la vista del caso el 30 de noviembre, el querellado señaló al Tribunal que no representaba a las quejosas, que devolvería el dinero, y a esos efectos, solicitaba la dirección de éstas. Sin embargo, no procedió de acuerdo a su compromiso.

Esta queja fue debidamente notificada al querellado. A pedido del Procurador General, el 8 de mayo de 2001, se le concedieron al querellado, quince (15) días adicionales para comparecer y contestar la queja. Esta resolución se diligenció personalmente al querellado.

Compareció el Procurador General solicitando que ampliemos el término concedido al Lcdo. Soto para contestar la querella, y para presentar su informe luego de presentada la contestación. Accedimos a lo solicitado mediante resolución de 8 de mayo de 2001, y apercibimos al querellado que su incumplimiento podría conllevar sanciones severas. Esta notificación fue diligenciada personalmente al Lcdo. Soto el 18 de mayo de 2001.

El 19 de junio de 2001 el Procurador General nos presentó su informe en el cual concluye que la renuencia del querellado a contestar, evidencia que son ciertas las alegaciones de las querellantes. A raíz de que su conducta no sólo atenta contra los Cánones de Ética Profesional, sino que también es constitutiva de delito, remitió el asunto a la Oficina de Investigaciones y Procesamiento Criminal del Departamento de Justicia.

Según nos indica el Procurador General, el antedicho Informe fue notificado por correo certificado con acuse de recibo a la misma dirección en donde diligenciamos personalmente al querellado, pero las misivas han sido devueltas.

E.

---

P.R. 00771.

[5] También surge de la queja que tomó dinero prestado de una de las personas que firmaron el contrato, dinero que tampoco devolvió.

El 21 de febrero de 2001, el Sr. Luis Méndez del Valle, presentó ante este Tribunal una queja en contra del Lic. Soto, AB-2001-41. En esta aduce que el querellado le solicitó tres mil quinientos dólares ($3,500), en préstamo para utilizarlos en un Kiosco en la Regata 2000. Llegaron a un acuerdo en el que el quejoso participaría en un 35% de lo producido por este.

Hasta le fecha el querellado no ha devuelto el dinero, no le devuelve las llamadas, ni ha cursado ninguna comunicación al querellante a pesar de haberle prometido devolvérselo en una oportunidad en que se encontraron por casualidad.

El 28 de febrero de 2001, la Secretaria de este Tribunal, cursó una comunicación al querellado requiriéndole su comparecencia a fin de que se expresara en  torno a la queja radicada. Esta comunicación nos fue devuelta.

Referimos el asunto a la Oficina del Procurador General, en cumplimiento a lo establecido en la Regla 14(d) de nuestro reglamento. El Procurador volvió a notificarle la querella al Lcdo. Soto, la cual fue devuelta por el correo.

El 9 de mayo de 2001, el Procurador General rindió su Informe, en el cual le imputa al querellado incumplimiento al deber de contestar los requerimientos de este Tribunal.

F.

El procedimiento disciplinario AB-2001-137, surgió el 15 de agosto de 2000, de una queja presentada por el Sr. Sigfredo Avilés Ruiz, ante la Comisión de Ética del Colegio de Abogados. En ésta alega que él suscribió un contrato de servicios profesionales con el querellado para que lo representara en una querella laboral de discrimen.

Ante alegada crisis económica del querellado para proseguir con los gastos del caso, logró que el quejoso tomará un préstamo de diez mil dólares ($10,000) a su nombre y se lo entregara completo al querellado, bajo la promesa de que él se haría cargo de los pagos. No sólo no ha pagado las mensualidades del préstamo sino que no ha comparecido a ningún señalamiento del caso ante el tribunal.  En la queja solicita que se le devuelva el expediente del caso, el cual contiene numerosos estudios médicos y trámites

del descubrimiento de pruebas, y que se dé por revocado el contrato, ya que este contiene una cláusula de que si se contratan servicios de otro abogado el querellante debe darle al querellado 1/3 de lo que reciba del pleito.[6]

La Oficina de Ética, en numerosas oportunidades, envió comunicaciones al querellado, pero estas le fueron devueltas ("unclaimed).[7] Dicha oficina compareció ante nos, para que tomemos la correspondiente acción.

A raíz de esta comunicación, mediante la resolución de 27 de junio concedimos al querellado quince (15) días para que compareciera ante la Comisión de Ética y contestara la queja contra él presentada. El querellado no ha cumplido con nuestra orden.

II

Con relación al procedimiento sobre Conducta Profesional, CP-2000-4, luego de un análisis concienzudo de la querella presentado por el Procurador General, de la Sentencia del Tribunal de Primera Instancia de 24 de febrero de 1997, y del Informe presentado por la Comisionada Especial, concluimos[8]:

## 1. **Incumplimiento con la Regla 9(j) del Reglamento del Tribunal Supremo**

Efectivamente, el querellado violó la Regla 9(j) de nuestro Reglamento, la cual establece:

---

[6] El contrato de servicios profesionales dispone:

"-----SEPTIMA: si "EL CLIENTE" decide renunciar a la representación legal del "EL ABOGADO" los honorarios de este último serán proporcionales al trabajo realizado y el resultado final que se obtenga, pero nunca mas (sic) de la 1/3 parte indicada en el expositivo quinto anterior."
El expositivo quinto establece que los honorarios de abogado serán el 25% de lo que se obtenga de la acción civil incoada judicial o extrajudicialmente.

[7] Según la "Moción Informativa de Incumplimiento del Querellado" presentada ante nos por el Colegio de Abogados, se le envió carta requiriéndole contestación el 31 de agosto de 2000, el 19 de septiembre de 2000, el 4 de octubre de 2000; se le enviaron recordatorios el 17 de noviembre, el 14 de diciembre de 2000, y el 18 de enero de 2001.

[8] En ausencia de perjuicio, parcialidad o error manifiesto del Comisionado Especial para apreciar la prueba, no alteraremos las determinaciones de hechos que están sustentadas en evidencia testifical y documental. In re Anastasio Caraballo, supra.

Tampoco un tribunal apelativo intervendrá con las determinaciones de hechos que haga el juzgador de los hechos, salvo ante la presencia de pasión, perjuicio, parcialidad o error manifiesto. Rolón García v. Charlie Car Rental, Inc., res. el 2 de junio de 1999, 99 TSPR 84; Belk v. Martínez, res. el 30 de junio de 1998; Pueblo v. Bonilla Romero, 120 D.P.R. 92; Vélez v. Srio. de Justicia, 115 D.P.R. 533 (1984).

(j) El(la) Secretario(a) llevará un registro de abogados(as) en el cual inscribirá en orden cronológico a base de la fecha de admisión al ejercicio de la profesión, los nombres de todos(as) los(as) abogados(as) autorizados(as) a postular ante este Tribunal, las fechas en que fueron admitidos al ejercicio de su profesión y su dirección postal y residencial. Llevará además, un registro de notarios(as) en el que inscribirá el nombre de los(as) abogados(as) autorizados(as) a ejercer el notariado, su residencia, y la localización de su oficina notarial. Los(as) notarios(as) deberán registrar en dicho registro su firma, signo, sello y rúbrica. Todo(a) abogado(a) tendrá la obligación de notificar al(a la) Secretario(a) cualquier cambio de dirección postal o física. Todo(a) notario(a) deberá notificar cualquier cambio en la localización de su oficina notarial. 4 L.P.R.A. Ap. XXI-A R. 9.

Entendemos que dada la naturaleza de esta Regla- mantener un registro de los abogados y notarios que ejercen en esta jurisdicción y mantener al Tribunal informado de los cambios de domicilio- un cambio tan trascendente en un dato relevante como lo es el apellido de un letrado, debe notificarse con premura y diligencia a este Tribunal, pues es un hecho que afecta directamente sobre el Registro de Abogados que lleva este Foro.

El que la regla halla consignado expresamente como obligación para los abogados sólo informar el cambio de dirección, obedece a que se trata de un hecho sumamente cotidiano en la vida de los seres humanos. No informar un cambio de apellido, cambio que incide sobre la individualización de los letrados, claramente atenta contra nuestra función reguladora del ejercicio de la abogacía. Ante la duda, el querellado pudo haber consultado a la Secretaria de este Foro.

Es pertinente mencionar, que la Hon. Comisionada Especial, agrega en su Informe, que el querellado solicitó darse de baja en la práctica de la notaría, por lo cual ordenamos a la Directora de la Oficina de Inspección de Notarias, la investigación correspondiente. Conforme al informe presentado, el querellado solicitó el traslado de su obra notarial el 8 de mayo de 1998, dicha comunicación no evidenciaba la decisión del Tribunal de Primera Instancia pues firmó como Soto, ni se aclaró ese hecho. Tampoco en la carta de 8 de septiembre de 1998, solicitando renuncia a la practica de la notaría, aludió a su cambio de nombre, ni en la carta de 31 de octubre notificando cambio de dirección.

El incumplimiento con la Regla 9(j), ante, es de por sí suficiente para decretar la separación indefinida en el ejercicio de la abogacía. In re Flores Fernández, PC de 24 de agosto de 2000, 2000 TSPR 135; In re Miranda Casanova, PC de 12 de febrero de 1999, 99 TSPR 37; In re González Goenaga, PC de 12 de junio de 1998, 98 TSPR 71.

El querellado tuvo varias oportunidades para notificarnos formal o informalmente el cambio de apellido concedido el 3 de octubre de 1997.

No podemos considerar la omisión de dicha información como un mero descuido, el nombre de un abogado es un atributo de su personalidad y de su profesión.

## 2. Violación al Canon 12 de los de Ética Profesional

El querellado ha incurrido en conducta profesional violatoria del Canon 12 de los de Ética Profesional, el cual contiene el deber del abogado hacia el tribunal, sus compañeros, las partes y los testigos, de ser puntual en su asistencia, conciso y exacto en el trámite y presentación de las causas, debiendo desplegar las diligencias necesarias para ello. Este deber debe desplegarse en todas las etapas del litigio y cobija el deber de acatar las órdenes de los tribunales. In re Ayala Torres, PC de 14 de febrero de 2000, 2000 TSPR 44; Heftler Const. Co. v. Tribunal Superior, 103 D.P.R. 844, 846 (1975); In re Pagán Hernández, 141 D.P.R. 113 (1996); In re Arroyo Villamil, 113 D.P.R. 568 (1982).

La determinación de hecho número 11 de la sentencia del Tribunal de Primera Instancia, Sala Superior de Humacao, de 24 de febrero de 1997, transcrita anteriormente, evidencia claramente el quebrantamiento a este canon.

## 3. Violación al Canon 9 de los de Ética Profesional

El querellado incurrió en conducta profesional impropia, contraria a lo que postula el Canon 9 de los de Ética Profesional. Este canon impone el deber a los abogados de observar una conducta caracterizada por el mayor respeto para con los tribunales.

La inasistencia, sin justa causa, a los señalamientos de vista en los tribunales, según expuesto en la determinación núm. 11 de la sentencia aludida, fundamenta nuestra conclusión.

## 4. **Violación al Canon 19 de los de Ética Profesional**

También el Lcdo. Soto Colón ha violado el Canon 19 de Ética Profesional, el cual impone el deber de mantener a los clientes informados de todo asunto importante que surja en el desarrollo del caso a él encomendado. Véanse: In re Flores Ayffan, PC de 2 de mayo de 2000, 2000 TSPR 123; In re Verdejo Roque, PC de 18 de marzo de 1998, 98 TSPR 26; In re Avilés Vega, 141 D.P.R. 627 (1996); In re Acosta Grubb, 119 D.P.R. 595 (1987); In re Rosario, 116 D.P.R. 462 (1985); In re Cardona Vázquez, 108 D.P.R. 6 (1978).

Las determinaciones de hechos 12 y 14 de la sentencia antes mencionada ilustran sobre el alto grado de abandono y desidia, inacción y displicencia desplegado por el querellado hacia los casos encomendados por sus clientes.

## 5. **Violación al Canon 20 de los de Ética Profesional**

De las determinaciones de hechos 23, 24, 25, 26, 27, y 41 surgen los requerimientos del Lcdo. Mondríguez, para que el querellado suscribiera las mociones de renuncia de representación legal, para él poder asumirla adecuadamente. Sin embargo, el querellado se mantuvo renuente a ello, y tampoco entregó los expedientes solicitados. Este tipo de conducta es violatoria del Canon 20, el cual reglamenta lo relativo a la renuncia de la representación legal de los clientes.

Reiteramos que todos los abogados deben desempeñarse con los más altos estándares de diligencia y competencia, desde la aceptación de un caso hasta la aceptación de la renuncia por el tribunal. In re Acosta Grubb, 119 D.P.R. 595 (1987); In re García Ortiz, 133 D.P.R. 666 (1993); In re Torres Torregrosa, PC de 19 de agosto de 1999, 99 TSPR 127.

En anteriores pronunciamiento, hemos expresado que en Puerto Rico el expediente pertenece al cliente y no al abogado. Nassar Rizek v. Hernandez, 123 D.P.R. 360 (1989); In re Vélez, 103 D.P.R. 590 (1975). Por lo tanto, cuando un cliente solicita que se le entregue un expediente, el abogado

encomendado al caso debe proceder a ello. In re Avilés Vega, 141 D.P.R. 627 (1996)

## 5. <u>Violación al Canon 18 de los de Ética Profesional</u>

El querellado incurrió en conducta violatoria del Canon 18 de los de Ética Profesional, el cual canon establece que será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea y que no puede prepararse adecuadamente, sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

La lectura de las determinaciones de hechos del tribunal inferior 19, 20, 21, 24, 27 y 30, demuestran una negligencia inexcusable por el completo abandono de la representación legal que ostentaba en diferentes casos. A raíz de lo cual, en diferentes Salas del Tribunal de Primera Instancia, fueron desestimados casos, por no haberse presentado ni excusado a diversos señalamientos para vista en sus meritos, de los cuales tampoco informó a sus clientes.

Respecto a este canon, hemos establecido, que más allá de las razones que inducen a un abogado a aceptar un caso, una vez asume la representación legal de un cliente, tiene ante su cliente y ante el tribunal "la responsabilidad indelegable de llevar a cabo esa gestión profesional con el más alto grado de diligencia y competencia posible." In re Siverio Orta, 117 D.P.R. 14, 19 (1986). Véase: In re Padilla Pérez, 135 D.P.R. 770 (1994); In re Pagán Hernández, 141 D.P.R. 113 (1996); In re Avilés Vega, 141 D.P.R. 627, 632 (1996).

## 7. <u>Violación al Canon 23 de los de Ética Profesional</u>

El querellado incurrió en conducta profesional violatoria del Canon 23, el cual que establece la naturaleza fiduciaria de las relaciones entre abogado y cliente, y exige que tal relación este fundada en la honradez absoluta. Prohíbe, además, mezclar el dinero y otros bienes del cliente que vengan a su posesión con los suyos propios.

Las determinaciones de hechos 31 a 36, 40 a 45 de la sentencia a la cual nos hemos referido, bastan para señalar el pobre manejo que tuvo el

querellado de los fondos entregados a él por sus clientes, particularmente el caso, Jorge Ayala y otros v. Eaton Corporation y otros, civil núm. 94-0113 (612). Depositó el dinero recibido para gastos y honorarios de abogados en una cuenta que utilizaba para uso personal, y de esa manera utilizó el dinero recaudado, sin rendir cuentas ni a sus clientes ni a la oficina del Lcdo. Mondríguez. Este tipo de conducta constituye un grave atentado a la relación fiduciaria entre abogado y cliente. Canon 23 de los de Ética Profesional, *supra*. In re Ramírez Ferrer, PC de 1 de marzo de 1999, 99 TSPR 38; In re Osorio Díaz, PC de 30 de junio de 1998, 98 TSPR 103; In re Morales Soto, 134 D.P.R. 1012 (1994); In re Rivera Carmona, 114 D.P.R. 390 (1983); In re Félix, 111 D.P.R. 71 (1981). Conductas impropias de esta naturaleza ameritan la separación del abogado al ejercicio de la profesión. In re Ramírez Ferrer, *supra;* In re Castro Mesa, 131 D.P.R. 1037 (1992); In re Sánchez Ferrari, 115 D.P.R. 40 (1984).

## 8. Violación al Canon 35 y 38 y al Preámbulo de los de Ética Profesional

De la sentencia del Tribunal de Primera Instancia, en específico de las determinaciones 37 a 39, surge para finales de octubre de 1994, una representante de Oriental Leasing, llamó a la oficina del Lcdo. Mondríguez para verificar el empleo de Armando Pérez y del Lcdo. Soto. Se le informó que Armando Pérez nunca trabajó allí y que el Lcdo. Soto no estaba trabajando para esa fecha en la oficina. La representante le informó al Lcdo. Mondríguez que el querellado había solicitado un arrendamiento financiero para un vehículo de motor, aduciendo que devengaba un sueldo de $52,000.00 al año.

El Lcdo. Mondríguez le replicó que el Lcdo. Soto nunca ganó más de $1,200.00 mensuales. La empresa manifestó que tenía una certificación de empleo firmada por el Lcdo. Mondríguez certificando el ingreso de $52,000.00.

El Lcdo. Mondríguez solicitó y obtuvo copia del documento y presentó una querella por el delito de falsificación en contra del querellado. El Sr. Evaristo Álvarez Ghigliotti, del Instituto de Ciencias Forenses, rindió un informe pericial el 20 de marzo de 1995, en el cual concluyó que la firma era con toda probabilidad una simulada de la firma genuina informal del Lcdo.

Mondríguez, pero no pudo especificar si el querellado la hubiese hecho. Ante la ausencia de evidencia suficiente para someter el caso penal, los cargos fueron archivados.

Ante estos hechos, coincidimos con el Procurador General, de que independientemente del delito de falsificación, el querellado se valió de un documento, que no fue suscrito por su patrono y que contenía información falsa.

El Canon 35 impone a los abogados un deber de sinceridad y honradez. In re Franco Rivera y Massini Soler, 134 D.P.R. 823 (1993); In re Cuevas Velásquez, PC de 29 de junio de 2000, 2000 TSPR 124; In re Irizarry Vega, PC de 24 de agosto de 2000, 2000 TSPR 128. Las obligaciones consagradas en este canon, constituyen normas mínimas de conducta que pretenden preservar el honor y la dignidad de la profesión. In re Martínez, PC de 12 de abril de 1999, 99 TSPR 53. Por ello, no sólo deben ser observados en el desempeño como abogados en un pleito, sino en toda faceta en la cual se desenvuelvan. Ir re Belk Arce, PC de 28 de junio de 1999, 99 TSPR 121.

El Canon 38 extiende la obligación de los abogados de conducirse en forma digna y honrada, a su vida privada. In re Roldán Figueroa, 106 D.P.R. 4 (1977).

De todo lo expuesto surge que el querellado violó el Canon 35, que exige del abogado sinceridad y honradez; el Preámbulo de los Cánones de Ética Profesional, donde se consigna la importancia de la fe en la justicia como factor determinante de convivencia social; y el Canon 38 de Ética Profesional, el cual, entre otras cosas, dispone el deber del abogado de evitar hasta la apariencia de conducta profesional impropia.

Las determinaciones de hechos de la sentencia mencionada, merecedora de deferencia y respeto, y que sirvió de base a este procedimiento, constituyen suficiente fundamento para el resultado arribado. Lo expresado en cada una de ellas plasma el quebranto inexcusable por parte del querellado a sus obligaciones, y un craso incumplimiento con la responsabilidad que pesa sobre sus hombros, quebrantando de esa manera la fe y la confianza depositada por la sociedad en los abogados. No hay duda de que la fe en la

justicia se considera un factor determinante de convivencia social y para ello, instituir y mantener un orden jurídico íntegro y eficaz es fundamental. Preámbulo de los Cánones de Ética Profesional.

III

Respecto de los restantes procedimientos disciplinarios, el menosprecio brindado a nuestra ordenes es alarmante.

En incontables ocasiones nos hemos expresados con relación al deber de la clase togada de responder con premura y diligencia a nuestros requerimientos relacionados a las quejas sobre su conducta profesional. In re Cuevas Velásquez, PC de 29 de junio de 2000, 2000 TSPR 124; In re Arroyo Rivera, PC de 19 de mayo de 1999, 99 TSPR 78; In re Negrón, PC de 30 de octubre de 1998, 98 TSPR 145; In re Vargas Soto, PC de 30 de junio de 1998, 98 TSPR 105; In re Velásquez Quiles, PC de 30 de junio de 1998, 98 TSPR 104; In re Guemárez Santiago, PC de 30 de junio de 1998, 98 TSPR 102; In re Pérez Bernabé, 133 D.P.R. 361 (1993); In re Colón Torres, 129 D.P.R. 490 (1991).

Encontramos incomprensible y obstinada la negativa de un miembro de la profesión de cumplir con nuestras órdenes. In re Nicot Santana, 129 D.P.R. 717 (1992). Por lo cual, le hemos impuestos severas sanciones, In re Melecio Morales, PC de 13 de febrero de 1998, 98 TSPR 11.

El patrón de incumplimiento y dejadez a nuestra órdenes en la esfera disciplinaria es incompatible con el ejercicio de la profesión de abogado. In re Vargas Soto, PC de 30 de junio de 1998; 98 TSPR 105; In re Castrillón Ramírez; 143 D.P.R. 74 (1997).

Las violaciones reiteradas a los Cánones de Ética Profesional, y los constantes y reiterados incumplimientos con nuestras órdenes, ameritan que el querellado sea separado indefinidamente del ejercicio de la profesión de abogado.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carlos E. Soto Colón
también conocido por
Carlos E. Soutto Colón

AB-1998-41
CP-2000-004
AB-2001-17
AB-2001-24
AB-2001-41
AB-2001-137

SENTENCIA

San Juan, Puerto Rico, a 9 de noviembre de 2001

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia decretando la suspensión inmediata e indefinida del Lcdo. Carlos E. Soto Colón, también conocido como Carlos E. Soutto Colón, del ejercicio de la profesión de abogado, a partir de la notificación de esta sentencia. Se le impone el deber de notificar a todos sus clientes de la presente inhabilidad de seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informar oportunamente de su suspensión a los foros judiciales y administrativos, Deberá además, certificar al Tribunal dentro del término de treinta (30) días a partir de la notificación de la presente, el cumplimiento de estos deberes, notificando también al Procurador General de Puerto Rico.

El Alguacil de este Tribunal procederá, de inmediato, a incautarse de la obra y sello notarial del querellado, luego de lo cual los entregará a la Directora de la Oficina de Inspección de Notarías.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Fuster Berlingeri no intervino.


                         Isabel Llompart Zeno
                         Secretaria del Tribunal Supremo